GULF & BRAZOS VALLEY RAILWAY COMPANY v. ROBERT WINDER ET AL.

Decided May 11, 1901.

1.—Railroad Corporation—Successor—Liability.

A railway corporation was chartered and did some preliminary work in grading a roadbed, but became defunct without having acquired title to the right of way. Another railway corporation was then organized and chartered to build the road, and there was a purported transfer to it of the franchise and rights of the former corporation by virtue of an unauthorized meeting of the stockholders of the former, called without due authority and representing only a small part of its stock, and there was no consent of the Legislature to such transfer. Held, that the later corporation was not liable for claims for work done for and by the first company in the construction of the road, although it may have received some incidental benefits therefrom.

**2.—Same—Laborer's Lien—Contract Relating Back.**

Where a construction company did some of the work of grading a railroad before the railway corporation was chartered, and after such charter was obtained a contract for grading and construction was made with the construction company and the work accepted, such contract related back so as to make the construction company the "contractor" of the railway company ab initio and entitled the persons doing the labor to the lien which the statute gives in favor of persons performing labor in the construction of a railroad at the instance of the railroad company or an agent or contractor thereof. Rev. Stats., arts. 3312, 3313.

**3.—Same—Right Not Conditional.**

The right of laborers to the unconditional lien on the road given them by statute for work done thereon was not affected by a provision in the contract between the construction company and the railway company, that payment for the work of construction was not to be made until the bonds of the railway company were sold or hypothecated, where there was no such provision in the contract between the laborers and the construction company.

**4.—Same—Intervention by Lienholders.**

In an action brought in the district court against a railway company for work and services rendered in the construction of the road, since the statutory right of other parties to intervene therein is restricted to such as are lienholders, it was error for the court to refuse, upon defendant's motion therefor, to dismiss pleas of intervention filed in such an action by parties who were not lienholders and whose claims were for less than $500 each. Rev. Stats., art. 3313.

**5.—Same—Maturity of Claim—Abandonment of Road.**

Where a railway company issues scrip for the work done in constructing the road, payable when the first train over the road reached a given point, and afterwards itself abandoned work on the road, it could not postpone or defeat the collection of such scrip on the ground that it had never matured.

**6.—Auditor's Report—Territorial Jurisdiction.**

Where a party consents to an order of court appointing an auditor to take testimony and specifying the place at which the auditor is to sit, he thereby waives any objection to the auditor's report on the ground that such place was beyond the territorial jurisdiction of the court. Aside from the matter of waiver, it is intimated that such an objection is not well taken.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*Alexander & Fain* and *Matlock, Miller & Dycus,* for appellant.

*Martin & Martin, R. L. Stennis,* and *Stevenson & Ritchie,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a judgment in favor of the original plaintiff in the suit, Robert Winder, and about 120 interveners, against appellant, the Gulf & Brazos Valley Railway Company, and in favor of plaintiff and most of the interveners against the Brazos Valley Construction Company, for the several amounts found to be due the plaintiff and interveners for work done or materials furnished in the construction of appellant's railway from Peck City, in Parker County, to Mineral Wells, in Palo Pinto County, Texas, with foreclosure in most instances of a lien on the railroad.

The construction of this railroad was undertaken in the fall of 1896, or the spring of 1897, and completed October 31, 1899, by Colonel W.

A. Squires, who was assisted at the outset by Colonel H. M. Taylor, one of the interveners, the plan then being to build the road from Millsap to Mineral Wells along a route which had been partially graded as early as 1885 or 1886, and over which, in 1890, a second unsuccessful effort had been made to construct a railrad. The undertaking of 1890, which had its beginning and end in that year, was that of the Gulf, Brazos Valley & Pacific Railway Company, a corporation. which was defunct and had been for several years when the last venture was made. The enterprising promoters, Colonel Squires and Colonel Taylor, neither of whom was even a stockholder in the defunct corporation, but both of whom were "looking and working for general results," as they expressed it, appointed themselves president and general manager, respectively, of the Gulf, Brazos Valley & Pacific Railway Company, and Colonel Taylor, the self-appointed general manager, appointed J. W. Conway auditor, N. C. Carroll chief engineer, and E. W. Horton right-of-way agent. Under these appointments some preliminary work was done, which was made the basis of recoveries had against appellant in favor of Taylor, Carroll, Conway, Morton and other interveners; but no active or very substantial work was done till about the 11th day of May, 1897, when the Brazos Valley Construction Company, chartered in the preceding March, undertook to grade the road from Peck City to Mineral Wells. The work of the construction company was contracted for and accepted by appellant railway company, which was chartered February 15, 1898. Both Squires and Taylor were named as directors in this charter, but Taylor declined to serve, and at once severed his connection with the enterprise. His claim and the claims of Carroll, Morton, and others of that class were founded upon the false assumption that appellant company became liable to them as successor to the old company, which, as before seen, was defunct and had no connection whatever, except in name, with the construction of the road. It was claimed, however, by Taylor and others that the new company was bound for the debts of the old company because of a transfer of its franchise and other rights pursuant to proceedings of a meeting of the stockholders of the old company at Waco in December, 1897. What purported to be a copy of the minutes of this meeting was read in evidence over the objections of appellant, Taylor testifying that this copy contained a correct statement of what occurred, while Squires testified that no such meeting ever took place, but that the purported minutes had been written by Taylor at Mineral Wells. The following were the names signed to the purported copy of the minutes: "H. M. Taylor, secretary and director; W. A. Squires, president and director; G. B. Gurley, chief engineer and director; E. J. Gurley, director."

Assuming that the court settled this conflict in favor of Taylor, we must hold that what purported to be a stockholders' meeting took place at Waco, whether it did or not, but it seems to have been very slimly attended, as one half of those participating were not stockholders, but self-appointed officers, leaving at most only two real stockholders pres-

ent, if indeed they were stockholders, and there was no evidence of authority to hold such a meeting, there being admittedly less than the whole of the stock represented.   As the company had long been practically defunct, such authority was not to be presumed.   Our statute provides for an annual, and a special meeting of the stockholders of railroad corporations.   Rev. Stats., arts. 4414, 4417, 4418.   This record not only fails to show that either of such meetings had been called as provided in these articles of the statute, but rather refutes such an inference.   The alleged meetings seems to have been no less a usurpation then was the self-appointment of Squires and Taylor to the chief places of authority in a disorganized and helpless company.   Besides, a railroad corporation has no power, except under given conditions and in a prescribed manner, to transfer its franchise and other rights to a new company without the consent of the Legislature.   Railway v. Morris, 67 Texas, 692; Railway v. Railway, 23 S. W. Rep., 1012; Rev. Stats., arts. 4549, 4550.   It seems hardly necessary to add, but the evidence shows, that the old company had no title to the right of way used by appellant, or other assets of value, and that the claim of Taylor that he owned the old roadbed, a small part only of which was used by appellant, and that, too, after obtaining the right of way by condemnation proceedings and otherwise from the owners of the soil, could have had no substantial foundation.

Our conclusion upon this brance of the case, therefore, is that the court erred in giving judgment in favor of Taylor, Carroll, Morton, and all other interveners who founded their claims upon the rights or liabilities of the Gulf, Brazos Valley & Pacific Railway Company.   As was said by Colonel Taylor in his testimony, of those supposed to be working for this company, "every man working on the road was a soldier of fortune," and they "were all working for general results."   They must, therefore, take the consequences.   The equitable doctrine imposing the liabilities of an insolvent private corporation upon a new company chartered to become its successor, and acquiring all its assets, as was held in Bank v. Investment Company, 74 Texas, 437, and Publishing Company v. Hittson, 80 Texas, 216, for several reasons, some of which are suggested above, has no application in a case like this.   Nor would the fact that appellant may have received some incidental benefit from the exploitation of Colonel Taylor and the work of his employes antedating its charter, render it liable for the payment of those claims. Railway v. Granger, 86 Texas, 357.

Next to be considered are the claims of those employed by the construction company, or appellant, who, if they "performed labor or worked with tools, teams or otherwise, in the construction" of appellant's railroad "at the instance of said company, a contractor or subcontractor, or agent of said company," are given a lien by statute to secure the same.   Rev. Stats., arts. 3312, 3313.   That the construction company was "a contractor" of the railway company within the meaning of this statute we find no difficulty in holding, although it was chartered and did considerable work before the railway company ob-

tained its charter. The contract made between the construction and railway companies covered the entire work of grading the road, and thus related back and made the construction company the contractor of the railway company ab initio.

It is, however, insisted that inasmuch as by the terms of this contract payment for grading the road was not to be made by the railway company to the construction company till the bonds of the former were "sold or hypothecated," the claims of those inteveners who worked for the construction company were not yet due, the bonds not having been floated. But the contracts between the construction company and the laborers contained no such provision, and as the statute above cited gave the laborers an unconditional lien for the amount due them "for personal services, or for the use of tools or teams" in the construction of the railroad, it was not within the power of the railway company to accept and use the grade as the work of its "contractor" and treat as contingent what the statute had thus made absolute.

The further objection is made to the judgment in favor of plaintiff and interveners holding such claims, that the auditor's report read in evidence to establish them should have been excluded on motion of appellant, because the auditor took testimony and heard argument at Mineral Wells, beyond the territorial limits of the Forty-third Judicial District, in which he was appointed by the District Court of Parker County. The order of appointment, to which the court understood all parties to agree, specified Mineral Wells as one of the places at which the auditor was directed to sit and take testimony, for the convenience of parties and witnesses. Having consented to this when the order was made, appellant must be held to have waived this objection to the introduction of the auditor's report as evidence, just as it might waive any other objection to evidence, if indeed the objection would be good in the absence of waiver, which we need not determine. It is laid down in the Encyclopedia of Pleading and Practice, volume 17, pages 1025 and 1026, that "the trial before a referee need not necessarily be held in the county of venue, but may be had elsewhere, if the ends of justice will best be promoted thereby, and if the departure will not be oppressive to either party." See cases there cited in footnotes. The equity practice in the Federal courts of permitting the master to take testimony out of the district is as old as the courts themselves. Consolidated Fastener Co. v. C. B. F. Co., 85 Fed. Rep., 54, and cases there cited.

In the report of the auditor some of the interveners, whose claims were each less than $500, were found not to be, as alleged in the pleas of intervention, lienholders, who alone are authorized by article 3313 of the Revised Statutes to intervene in cases like this, and appellant consequently moved to strike out the pleas of intervention of such interveners for want of jurisdiction, but this was refused upon the ground that the court had jurisdiction independent of a lien, "if the interveners in good faith believed that they had such lien at the time of filing their suits." This holding seems to be at variance with a line of decisions in this

State which must be accepted as authoritative upon the question, among which is the case of Carter v. Hubbard, 79 Texas, 356, reviewing previous cases.

We agree with the trial court that the evidence, apart from the auditor's report, warranted the conclusion that the script issued by appellant and payable when the first train of cars reached the Jack County line had matured when this suit was brought. It is true the cars had not reached the Jack County line as contemplated, but it is also true that it was the fault of appellant in abandoning the work that they had not, and it can not thus take advantage of its own wrong to postpone or defeat the collection of its just debts. Barnett v. Railway, 55 S. W. Rep., 986, and cases there cited.

Our conclusion upon the whole case is that the judgment should be reversed and rendered in favor of appellant against intervener Taylor and all other interveners whose claims involved alleged liabilities of the Gulf, Brazos Valley & Pacific Railway Company; that as to interveners having no lien whose claims were each less than $500 the judgment should be reversed and their pleas of intervention dismissed without prejudice; and that as to all other parties the judgment should stand affirmed, with costs created by each intervener failing to recover taxed against him.

*Reversed and rendered in part.*
*Affirmed in part.*

Writ of error refused.