POPE et al. v. ANSLEY REALTY CO.

(Court of Civil Appeals of Texas. Jan. 28, 1911. On Motion for Rehearing, March 4, 1911.)

1. APPEAL AND ERROR (§ 302*)—RECORD—OBJECTIONS IN TRIAL COURT—MOTION FOR NEW TRIAL.

District and county court rule 68 (67 S. W. xxv) provides that grounds of objection couched in general terms according to certain examples given shall not be considered by the court. Held, that while the attention of the court must be called to any erroneous finding by the jury in a motion for a new trial, it is unnecessary in such motion to call the court's attention to any ruling on a question of law, and hence objections in such motion that the court erred in admitting testimony over defendant's objection as shown by exceptions taken on the trial, and that the court erred in refusing to give special charges requested by the defendants, sufficiently called the trial court's attention to such rulings to authorize their review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1744–1752; Dec. Dig. § 302.*]

2. VENDOR AND PURCHASER (§ 3*)—CONTRACT—CONSTRUCTION.

A contract between defendants and a land company provided that the latter should have the exclusive sale of certain described land for 90 days from August 21, 1907, provided a sale then pending was not closed on or before that date; defendants agreeing to sell at $8 an acre, the land company to retain all excess for their commissions, sale to be conditioned on payment of 40 per cent. in cash and balance deferred at 8 per cent. secured by vendor's lien notes, the land company agreeing to sell all the land, but, in case any remained at the expiration of the contract period, they would buy the same themselves. Held, that the contract was not a contract of unconditional sale to the land company, but an option authorizing it to sell the land to others within the specified period; the land company's agreement to purchase being conditional and dependent on the contingency of its failure to sell to others so that it was enforceable only on the happening of the contingency.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3; Dec. Dig. § 3.*]

3. EVIDENCE (§ 213*)—COMPROMISE AND SETTLEMENT.

In an action for broker's commissions, evidence that defendants had offered to pay plaintiffs one-half of the commissions claimed was not in itself, without further showing, objectionable as evidence of an attempted compromise.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751; Dec. Dig. § 213.*]

4. EVIDENCE (§ 471*)—CONCLUSION OF WITNESSES.

In an action for broker's commissions, evidence by one of the plaintiffs that his firm sold the land in controversy on a specified date to a land company was inadmissible as a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. APPEAL AND ERROR (§ 1051*)—ADMISSION OF EVIDENCE—PREJUDICE.

Error, if any, in admitting evidence of the contents of a written contract reciting that F. was authorized to purchase certain land in controversy for a corporation, was not prejudicial, where such authority was established by other testimony and was uncontroverted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

6. BROKERS (§ 85*)—ACTION FOR COMMISSIONS—EVIDENCE.

Where, in an action for broker's commissions, plaintiffs claimed a sale to the land company, and that a contract between the land company and the owner authorizing the company to sell the land within a specified time and itself to purchase any unsold balance, was made to deprive plaintiffs of the commission, evidence of a member of such company that it was the company's practice to buy and sell land direct was admissible and relevant to sustain plaintiffs' contention that they furnished the purchaser.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 85.*]

7. APPEAL AND ERROR (§ 1053*)—REVIEW—ADMISSION OF EVIDENCE—PREJUDICE.

Error, if any, in permitting a witness to testify to his legal interpretation of a written contract, was harmless to defendant, where the court charged that, if the jury believed that such contract was the only agreement entered into between defendants and a land company, plaintiffs could not recover.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053;* Trial, Cent. Dig. § 977.]

8. APPEAL AND ERROR (§ 1053*)—REVIEW—ADMISSION OF EVIDENCE—PREJUDICE.

Where, in an action for broker's commissions, the court charged that if a land company was satisfactory to defendants as a purchaser, and a sale was in fact made by defendants to the land company, then they should find for plaintiffs, evidence of one of the plaintiffs that he understood the land company was able to buy the land in controversy was not prejudicial to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1053.*]

9. BROKERS (§ 88*)—ACTION FOR COMPENSATION—INSTRUCTIONS.

In an action for broker's commissions, the court directed a verdict for defendants in case the jury found the written contract between the defendants and the purchaser was the only contract entered into, that the burden was on plaintiffs to prove their case by a preponderance of the evidence, and, if they had not done so, could not recover, there was no error in refusing to charge that if the jury failed to find that the purchaser contracted to purchase the land from defendants, and that defendants conspired to write the contract as it was written instead of in the form of a contract of sale, in order to cheat plaintiffs out of their commissions, the jury should find for the defendants.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 88.*]

10. BROKERS (§ 88*)—ACTION FOR COMMISSIONS—INSTRUCTIONS.

Plaintiffs, who were authorized to sell land for defendants, were not parties to a written contract between defendants and the purchaser alleged to have been written in the form of an

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

agency contract to sell, binding the purchasers to purchase the amount unsold after specified time in order to deprive plaintiffs of their right to commissions. *Held*, that a requested charge that if the jury did not believe that the purchaser contracted to purchase the lands from defendants, and that defendants conspired to write the contract in the form adopted, in order to defraud plaintiffs out of their commissions, the jury should find for defendants, was properly refused as erroneously requiring plaintiffs to prove as a condition of their right to recover that the written contract was prepared to cheat and defraud them; their cause of action being complete on proof that their purchaser agreed with the owner to buy on the terms authorized and was ready, willing, and able to do so independent of the written agreement.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121–127; Dec. Dig. § 88.*]

11. BROKERS (§ 85*)—ACTION FOR COMMISSIONS —EVIDENCE.

Where, in an action for broker's commissions, there was a sharp conflict between the testimony of representatives of the purchaser and defendants as to whether such representatives agreed with defendants, independent of a written contract executed between them, to purchase the land in controversy on the terms and at a price satisfactory to defendants, evidence of such representatives that they had decided to buy the land for their corporation on the terms quoted by plaintiffs before they negotiated for the purchase with defendants was admissible, though no attempt had been made to impeach such witnesses.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106–115; Dec. Dig. § 85.*]

Conner, C. J., and Dunklin, J., dissenting in part.

Appeal from District Court, Donley County; J. N. Browning, Judge.

Action by Ben T. Ansley and others, doing business as the Ansley Realty Company, against John B. Pope and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Stephens & Miller and A. T. Cole, for appellants. W. B. Chauncey and H. B. White, for appellees.

DUNKLIN, J. Ben T. Ansley and others, composing the partnership firm of the Ansley Realty Company, sued John B. Pope and A. M. Smith to recover commissions alleged to have been earned by the plaintiffs, and from a judgment in their favor the defendants have appealed.

The defendants were owners of eight sections of land, and plaintiffs alleged that at the special instance and request of the defendants plaintiffs undertook the sale of the same for a consideration of 5 per cent. of the amount to be realized therefor; that they procured a purchaser in the Monarch Land & Loan Company, who entered into a valid and binding contract in writing with the defendants, whereby it agreed to purchase, and defendants agreed to sell, the land for the price and upon the terms fixed, and by virtue of that contract plaintiffs alleged that they had earned the commissions sued for.

As an alternative plea plaintiffs alleged that, in the event the court should hold that the written contract did not constitute a sale entitling plaintiffs to the commissions, nevertheless the defendants and the Monarch Land & Loan Company conspired together to defraud plaintiffs of any commission on said sale, and drew the contract as the result of such conspiracy; that plaintiffs procured a purchaser in the Monarch Land & Loan Company, ready, willing, and able to purchase the land, and who would have purchased the same but for the conspiracy alleged. In addition to a general denial, the defendants pleaded that, if the plaintiffs were ever employed by the defendants to sell the land in controversy, such employment was terminated long prior to any sale of the land by defendants and after the plaintiffs had a reasonable time within which to procure a buyer, and that the land was not sold by the plaintiffs nor through their aid or assistance. There were eight sections of the land, a portion of which seems to have been conveyed to one Hiatt, president of the company, and the remainder to different purchasers procured by the Monarch Land & Loan Company.

[1] The appellees object to a number of assignments of error presented in appellants' brief, some complaining of the admission of testimony, and others of the refusal of requested instructions, the contention being that the errors assigned were not sufficiently brought to the attention of the trial court in appellants' motion for a new trial, the only reference thereto in the motion being: "The court erred in admitting the testimony over the objection of the defendants as shown by exceptions taken on the trial." And "the court erred in refusing to give in his charge to the jury the special charges requested by defendants." In support of their contention, appellees cite rule 68 (67 S. W. xxv) for the district and county courts and Sutherland v. MacIntire, 28 S. W. 578. Rule 68 reads: "Grounds of objections couched in general terms—as that the court erred in its charge, and in sustaining or overruling exceptions to the pleadings, and in excluding or admitting evidence, the verdict of the jury is contrary to the evidence, the verdict of the jury is contrary to law, and the like—shall not be considered by the court."

We think it well settled by the decisions of this state that, as a basis for complaint upon appeal of any erroneous finding by the jury in the trial court, it must be shown that the attention of the trial court was called thereto in a motion for new trial, but that it is unnecessary in the motion for new trial to call the trial court's attention to any ruling on a question of law, and, such being our understanding of the decisions, the objection of appellees to a consideration of appellants' assignments of error are overruled.

[2] The written contract referred to in

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

plaintiffs' petition and mentioned above reads: "The State of Texas, County of Donley. This contract made and entered into by and between A. M. Smith and J. B. Pope, of Donley county, Texas, as parties of the first part, and the Monarch Land & Loan Co., of Amarillo, Texas, as parties of the second part, witnesseth: That the parties of the first part herein give to the parties of the second part the exclusive sale of the following described land, to wit: Sections 302, 303, 304, 327, 328, 329, 330, 345, block 44, Moore county, Texas, for ninety days from the twenty-first day of August, providing a sale now pending is not closed on or before that date. The price agreed upon and for which the parties of the first part agree to sell, is $8.00 per acre, straight through, school and patented, and parties of the first part further agree to deed any or all of the above described land, not less than 160 acres in one deed to the Monarch Land & Loan Co. or any person or persons they may sell to for whatever price the said Monarch Land & Loan Co. may sell for, and all excess above the aforesaid price shall be retained by the party of the second part as their commission. The terms shall be forty per cent. cash payment, the balance one and two and three years at 8 per cent. interest. The deferred payments shall be evidenced by vendor lien notes on the above described land. The party of the first part further agrees to furnish each purchaser with a warranty deed and abstract showing good and perfect title. The parties of the second part agree to sell all of the eight sections as per contract, but should there be any remaining after the expiration of the time specified, then the parties of the second part further agree to buy the same themselves. Signed in duplicate this 14th day of August, 1907. [Seal.] A. M. Smith. [Seal.] J. B. Pope. [Seal.] Monarch Land & Loan Co. [Seal.] S. F. Hiatt, Pres."

Upon the back of the contract was indorsed the following: "The terms of the contract on the reverse side hereof are hereby extended as to time to and including January 21, 1908, and it is expressly agreed that all supposed claims or claims of either party hereto growing out of any supposed breach or breach of said contract by either party up to this date are hereby waived. Witness our hands at Clarendon, Texas, this 18th day of November, 1907. Monarch Land & Loan Co., by S. F. Hiatt, President. A. M. Smith. J. B. Pope."

By the terms of this contract the Monarch Land & Loan Company was given the option to sell the property to others within the period of time specified, and in the event of such sales the owners were bound to accept the obligations of such purchasers for deferred payments for the land, instead of the obligations of the Monarch Land & Loan Company. That company did not agree unconditionally to purchase any of the land, but con-

tracted to purchase such land only as should remain unsold to others at the termination of the period of time given for sales to others. Its contract to purchase was conditional and dependent upon the contingency of its failure to sell to others, and therefore could become absolute and enforceable in the event only of the happening of that contingency. Until the happening of that contingency, in no event could it be said that the written contract was of itself sufficient to show a sale by the owners authorizing a recovery by plaintiffs provided it was further shown that plaintiffs' efforts were the efficient cause which induced the Monarch Land & Loan Company to enter into that contract. See Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847 (Supreme Court). It was shown on the trial that the Monarch Land & Loan Company did negotiate sales of all the lands, except 160 acres, to persons in no manner interested with that company, and that its president purchased the remaining 160 acres. The record does not show when such sales were consummated; but, presumably, they were made within the time limit named in the contract, and, if so, then the conditional agreement to purchase stipulated in the written contract never became absolute.

[3] Appellants' assignment complaining of the admission of testimony, in effect, that the defendants had offered to pay one-half of the commission claimed by the plaintiffs is overruled. The ground of the objection was that the offer shown was by way of compromise; but we find nothing in the bill nor in the statement of facts, to justify that contention.

[4] There was error which will require a reversal of the judgment in permitting Ben T. Ansley, one of the plaintiffs, to testify that his firm sold the land in controversy to the Monarch Land & Loan Company about the 14th day of August, 1907; such testimony being a conclusion of the witness upon one of the vital issues in the case to be determined by the jury. Not only was the testimony the conclusion of the witness, but it was based chiefly upon information which he had acquired from others. [5] If there was error in admitting the deposition of S. F. Hiatt of the contents of the written contract between the Monarch Land & Loan Company and McFarland which recited that McFarland was authorized to purchase land for that company, the error was harmless in view of the fact that such authority on the part of McFarland was established by other testimony which was uncontroverted. [6] Nor do we think that there was error in permitting Hiatt to testify that it was the practice of his company to buy and to sell land direct, as we think such testimony has probative value to sustain plaintiffs' contention that they furnished a purchaser in the Monarch Land & Loan Company ready, willing

and able to purchase the land upon terms satisfactory to the defendants. 1 Wigmore on Evidence, § 102.

[7] The error in permitting the witness S. F. Hiatt to testify to his legal interpretation of the written contract above set out was harmless in view of the fact that the court instructed the jury that, if they believed that that contract was the only contract entered into by and between the Monarch Land & Loan Company and the defendants, then a verdict should be returned in favor of the defendants.

[8] The court instructed the jury, in effect, that if the Monarch Land & Loan Company was satisfactory to the defendants as a purchaser, and that the sale was in fact made by the defendants to the Monarch Land & Loan Company, then they should find for the plaintiffs. This charge rendered harmless the error, if any, in permitting Ben T. Ansley to testify that he understood that the Monarch Land & Loan Company was able to buy the land in controversy.

[9] The refusal of the following requested instruction is assigned as error: "In case you fail to find and believe from the evidence, by a preponderance thereof, that on August 14, 1907, the Monarch Land & Loan Company entered into a contract for the purchase of the land in controversy from the defendants, and that the defendants conspired with S. F. Hiatt to write the contract sued on as it is written, instead of as a contract of sale, for the purpose of cheating and defrauding the plaintiffs out of their commission, then you will find for the defendants."

The instruction given as already noted, directing a verdict for defendants in the event of a finding that the written contract was the only contract entered into, was an affirmative presentation of the theory of defense. That instruction, in connection with the further charge that the burden was upon plaintiffs to make out their case by a preponderance of the evidence, and that if they had not discharged that burden the verdict should be for defendants, we think, was sufficient, and, accordingly, hold that there was no error in refusing the requested instruction.

[10] Besides, the requested instruction is subject to the criticism that it required a showing by plaintiffs, as a condition to their right of recovery, that the written contract was prepared for the purpose of cheating and defrauding defendants. Plaintiffs were not parties to the written agreement, and if it was proven that the alleged purchaser agreed with the owners to buy the land upon the terms authorized and was ready, willing, and able to do so, and plaintiffs' efforts were the procuring and efficient cause of that offer, then plaintiffs earned their commission, independent of the written agreement, and their right thereto could not be defeated by the written agreement whatever may have been the purpose of the parties in executing it.

[11] Over defendants' objection, J. L. McFar-

land was permitted to testify that on August 14, 1907, he and Mr. Hiatt went to Clarendon for purpose of buying this land, and that the witness had then decided to buy the land upon the terms quoted to him by plaintiffs; the witness being at that time the purchasing agent of the Monarch Land & Loan Company. The court also permitted S. F. Hiatt to testify by deposition, in substance, that he, as the president of the Monarch Land & Loan Company, had concluded to take the land upon plaintiffs' proposition before he negotiated with the defendants for the purchase of the same. The ground of the objections made to this testimony was that the same referred to a state of mind of the witnesses not communicated to the defendants or either of them, but resting solely in the breasts of the witnesses and was immaterial to any issue in the case. There was a sharp conflict between the testimony of McFarland and Hiatt on the one side, and the defendants on the other, as to whether the witnesses first named did agree with the defendants independent of the written contract to purchase the land upon the terms and for a price satisfactory to the defendants, and, while no attempt was made to impeach McFarland and Hiatt, the majority of this court are of the opinion that the testimony now under discussion was properly admitted, as the same was in the nature of proof of circumstances bearing upon the testimony of McFarland and Hiatt with sufficient directness and force to give appreciable value in determining whether or not the same was true, and was therefore relevant. 1 Wigmore on Evidence, § 102; G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; 3 Wigmore on Evidence, §§ 1725, 1965; 1 Greenleaf on Evidence, §§ 51a, 52, and decisions cited in notes.

The writer, however, is unable to concur in this conclusion and is of the opinion that the testimony should have been excluded. While proof of facts and circumstances apparently collateral to the material issues is admissible as tending to show that testimony of the witnesses upon such issues is probably true, yet it is well settled that, until the credibility of a witness has been assailed by direct attack, his testimony cannot be corroborated by proof that prior to the trial he made statements in harmony with his testimony. Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; Glover v. Coit, 36 Tex. Civ. App. 104, 81 S. W. 138; Hunter v. Lanius, 82 Tex. 682, 18 S. W. 201; 3 Encyc. of Evidence, pp. 731, 732, 733. The writer does not doubt that, if the prior intention or purpose of the witnesses was a material inquiry, then they could testify thereto; but, as their intentions or purposes entertained before their meeting with the defendants could not be in any sense binding upon the defendants and could be admitted for no other purpose except for the purpose of corroborating the witnesses testifying thereto, he is unable to understand

why there should be a better reason for the admission of the same than to admit former declarations made by the witnesses when their credibility has not been assailed. In 1 Wigmore on Evidence, § 581, p. 721, the author says: "It remains to be noted that this sort of testimony, or any other whatever, to the fact of a person's intent or motive, is of course receivable only on the assumption that *the intent or motive is a fact permissible to be proved under the substantive law* involved in the case. This assumption conditions the admissibility of all evidence and of this sort in particular. Hence, if for any reason of substantive law the person's intent or motive is not provable at all, it is not provable by such testimony." See, also, Browne v. Hickie, 68 Iowa, 330, 333, 27 N. W. 276, cited in the text. It appears to the writer that the citations from the same author first above noted and which apparently sustain the ruling of the majority were used in the qualified sense implied by the quotation last given.

In Evansich v. Railway, 61 Tex. 26, cited with approval in Railway v. Matthews, supra, it is said: "As all issues of fact must be determined by the testimony of witnesses, it would seem that any fact which bears upon the credit of the witness would be a relevant fact, and this whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, interest, want of memory, or other like fact." But in that case as well as in the case of Railway v. Matthews, the evidence held to be admissible was evidence tending to discredit the testimony of a witness, and the writer does not believe that those decisions are in point upon the question now under discussion for the reason that greater latitude is allowed and a different rule obtains when it is sought to discredit the testimony of a witness than when an effort is made to corroborate him.

Reversed and remanded.

DUNKLIN, J., dissenting in part.

CONNER, C. J., concurs in the above conclusions, except that he does not wish to be understood as consenting to the construction given the contract discussed in the majority opinion. He inclines to the view that the contract relied upon as an appointment of agency is, under the circumstances of the case, in all essential features a contract of sale to the Monarch Land & Loan Company; but, inasmuch as the question has not been directly presented in the briefs of the parties nor argued, he will not undertake to give his view at length.

On Motion for Rehearing.

DUNKLIN, J. The statement contained in the opinion written on the original hearing relative to sales made through the agency of the Monarch Land & Loan Company, reading: "The record does not show when such sales were consummated, but presumably they were made within the time limit named in the contract"—was inaccurate in this: The record shows that some of the land was sold during the 90-day period originally provided in the contract between the company and the owners of the land, and other sales were made after the termination of that period; but the evidence relative to the acreage sold during that period and subsequently thereto is indefinite and conflicting, and we are cited to no evidence and have found none in the record showing the acreage sold prior to the termination of the period of extension of time indorsed on the back of the contract. Notwithstanding this correction in our findings of fact, the majority of the court adhere to the conclusions of law touching the contract as announced in the opinion on original hearing.

The motion for rehearing is overruled; but CONNER, Chief Justice, still adheres to his views previously expressed relative to the legal effect of the written contract mentioned above.