AMERICAN HOME LIFE INS. CO. v.
JENKINS et al.

(Court of Civil Appeals of Texas. Ft. Worth.
May 20, 1911.)

1. CORPORATIONS (§ 79*) — SUBSCRIPTIONS
THROUGH PROMOTERS—CONSTRUCTION — EN-
TIRE AND SEVERABLE CONTRACTS.

A contract with the promoters of a corpora-
tion, whereby a subscriber to the stock of the
proposed corporation agreed to pay the corpora-
tion when organized a certain amount for the
stock and also to pay the promoters a certain
amount for the expenses of promotion, is sev-
erable.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 186–193; Dec. Dig. § 79.*]

2. CORPORATIONS (§ 448*)—LIABILITY—CON-
TRACTS OF PROMOTERS.

A wife, without her husband's consent, at
the solicitation of those promoting a corpora-
tion, subscribed for shares of stock, agreeing to
pay the corporation for such shares, and also to
pay the promoters a certain sum for promotion
expenses and the privilege of subscribing. The
corporation, when organized, did not assume
the contracts of the promoters and received no
benefit from the money paid them, or from prop-
erty transferred by the wife to such promoters
to secure the performance of her contract with
them. Held that the corporation was not liable
to the husband for the money paid to the pro-
moters, or for the property transferred to them,
though the payment and transfer were secured
by fraud, and the money and property was com-
munity property, and the husband had not con-
sented to the contract.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. §
448.*]

Appeal from District Court, Haskell Coun-
ty; C. C. Higgins, Judge.

Action by H. H. Jenkins and another
against the American Home Life Insurance
Company. From a judgment for plaintiffs,
defendant appeals. Reversed and rendered.

C. K. Bell, for appellant. Helton & Mur-
chison, for appellees.

DUNKLIN, J. Mrs. Zuma Jenkins gave
to Stewart, Walker & Co. her two subscrip-
tions in writing each for 100 shares of stock
in the American Home Life Insurance Com-
pany, the organization of which Stewart,
Walker & Co. were then promoting, one of
the subscriptions being dated April 1, 1909,
and the other April 29, 1909. The subscrip-
tion dated April 29, 1909, is as follows:

"The American Home Life Insurance Com-
pany.

"Subscription to Capital Stock.

"No. 875. 100 shares.

"Whereas, Stewart, Walker & Co. of Fort
Worth, Texas, are promoting the organiza-
tion of a life insurance company, to be in-
corporated in pursuance of the laws of the
state of Texas, under the name of the Ameri-
can Home Life Insurance Company, with an
authorized capital stock of five hundred thou-
sand dollars and a paid-up capital of at least
two hundred thousand dollars, and a net sur-
plus of at least one hundred and twenty-five
thousand dollars, paid up and free from pro-
motion and organization expenses, all in ac-
cordance with a printed prospectus issued by
them and delivered to me.

"And whereas, by their acceptance of this
subscription said Stewart, Walker & Co.
agree to endeavor with all reasonable dili-
gence to accomplish on or before December
31st, 1909, the organization of said corpora-
tion with capital stock and surplus full paid
as aforesaid, they defraying all expenses of
promotion and incorporation:

"Now, therefore, I do hereby subscribe for
100 shares of the par value of ten dollars
each of the capital stock of said the Ameri-
can Home Life Insurance Company and I do
hereby agree with the said company and
with the said Stewart, Walker & Co. to pay
therefor the sum of $2250.00 dollars as fol-
lows: The sum of $1750.00 dollars I agree
to pay to said the American Home Life In-
surance Company at any time after May 1st,
1909, immediately upon receipt of notice
from said Stewart, Walker & Company that
said company has been duly incorporated,
and that its capital stock has been subscrib-
ed in good faith in amounts and at rates net-
ting the company at least two hundred thou-
sand dollars capital, and at least one hun-
dred and twenty-five thousand dollars sur-
plus in the aggregate when paid. The re-
maining sum of $500.00 dollars I agree to
pay and do pay concurrently with this sub-
scription to the said Stewart, Walker and
Co. in consideration of their agreement here-
inbefore recited, and in lieu of any further
or other contribution on the expense of pro-
moting and incorporating said company.

"Witness my hand this the 29th day of
April, 1909.

"This application is to take place as part
of application #869.

"Zuma Jenkins,
"Name of Subscriber.
"Haskell, Texas,
"Post Office Address.

"(36) 2250.
"1750.
"1800."

The subscription dated April 1, 1909, is a
duplicate of the one already quoted, with the
exception of date and the further difference
that it contains a statement that it is to take
the place of application No. 601 as a part
of the same.

One L. P. Gamble and one Fred Hoecker
each had previously subscribed for 500 shares
of stock in the proposed company, their
subscriptions being in writing and in the
same terms as the subscription above set out.
Mrs. Jenkins' subscriptions were procured by
one J. Thomas Gregory, who induced her to
purchase from Gamble and Hoecker each the
privilege of being allowed to substitute her

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

subscriptions for 100 shares, and thus reduce each of their subscriptions to 400 shares. Two hundred and fifty dollars was charged as a bonus by Gamble and also by Hoecker for the surrender of 100 shares of the stock already subscribed by him, and it was understood by Mrs. Jenkins at the time she gave her subscriptions that each 100 shares of stock for which she subscribed would cost her $2,500 or $250 in excess of the amount stated in each of her subscriptions. When she gave her first subscription to Gregory, she delivered to him three vendor's lien notes in her favor in a sufficient amount to cover the $1,750 named in her subscription as payable to the corporation when organized, and at the same time she executed to Gregory her promissory note for $750, which she paid a few days later. At the time she gave her second subscription she executed to Gregory her note for $750, and gave as collateral security a vendor's lien note in her favor for $600, and also agreed with Gregory to pay in vendor's lien notes the $1,750 dollars named in her contract as payable to the proposed company. The note given by Mrs. Jenkins to Gregory for the sum of $750 at the time of her second subscription for stock, together with the vendor's lien note attached thereto as collateral security, was sold by Gregory to the Waggoner Bank & Trust Company of Ft. Worth. Afterwards on May 3, 1909, the proposed company was organized.

After the company was organized, its general manager demanded of Mrs. Jenkins payment of the $3,500 claimed to be due on her two subscriptions for stock. Quite an extensive correspondence ensued between the parties resulting, finally, in Mrs. Jenkins' refusal to take the stock and the return to her by the insurance company of the three vendor's lien notes which she had turned over to Gregory in payment of the $1,750 due the company under the first subscription. These three notes were the only notes ever received by the insurance company after its organization. Nor did the company after its incorporation receive from Stewart, Walker & Co., nor from Gregory, nor from any one else, any other consideration paid by Mrs. Jenkins to Gregory, and there was no proof to show that appellant's articles of incorporation made it liable upon the contracts of Stewart, Walker & Co. for promoting expenses.

This suit was originally instituted by Mrs. Zuma Jenkins and her husband, H. H. Jenkins, but later an amended petition was filed in which H. H. Jenkins alone prosecuted the suit as plaintiff. In the amended petition it was alleged that in the transactions with Mrs. Zuma Jenkins Gregory was the agent of the defendant; that the vendor's lien notes transferred by Mrs. Jenkins to Gregory were community property of the plaintiff and his wife; that the transfers were made without her husband's knowledge or consent; that Mrs. Zuma Jenkins was induced to enter into said contracts by false and fraudulent representations by Gregory that the stock had a market value of $30 per share. Plaintiff sought judgment for a rescission of the said contracts on the part of Mrs. Zuma Jenkins and for judgment against the defendant for the money paid by her to Gregory; for a restoration of all the vendor's lien notes delivered by Mrs. Jenkins to Gregory, and, in the alternative, for the value of the same in the event defendant did not return them.

Judgment was rendered in favor of the plaintiff against the company canceling the contracts entered into by Mrs. Jenkins and mentioned above, also for $1,100, with interest thereon, and the judgment further decreed title in the defendant company to the $600 vendor's lien note which Mrs. Jenkins delivered to Gregory as collateral security for the $750 note signed by Mrs. Jenkins and payable to Gregory which was given at the time Mrs. Jenkins subscribed for the second 100 shares of stock in the defendant company, and which note and collateral Gregory afterwards sold to the Waggoner Bank & Trust Company. From that judgment the defendant has prosecuted this appeal.

[1] In the case of W., M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837, our Supreme Court held that a corporation is not bound by the contracts of its promoters entered into before the corporation is brought into legal existence, unless, after it is chartered, it adopts the contracts as its own, in the absence of a provision in the articles of incorporation or in the statute under which the same is chartered that the corporation shall be liable on such contracts. And this is true even though the corporation is the recipient of some of the benefits resulting from the contracts made by the promoters and antedating its charter. See, also, Bonham Cotton Press Co. v. McKellar, 86 Tex. 694, 26 S. W. 1056; G. & B. V. Ry. Co. v. Winder, 26 Tex. Civ. App. 263, 63 S. W. 1043.

This decision is of controlling effect in this case. As shown, the contracts of Mrs. Zuma Jenkins antedated the organization of the corporation, and she parted with the vendor's lien notes and money before the corporation came into existence. Appellant received none of the money and the three vendor's lien notes received by it were returned to Mrs. Jenkins. It demanded payment of the $3,500 which Mrs. Jenkins had agreed to pay to the corporation for the 200 shares of stock as shown in her subscription contracts, but, this demand being refused, appellant returned the three vendor's lien notes which had come into its possession and elected to declare Mrs. Jenkins' contract of no further force or effect. Clearly, the subscription contract by Mrs. Jenkins was severable, one part being in favor of the corporation when organized and the other part being in favor of the promoters.

[2] Appellant did not adopt her contract in favor of the promotors, nor did it receive any benefits thereunder, and is not liable to the plaintiff for any benefits received by the promotors under the contracts in their favor, even though it be true that such benefits so received belonged to the community estate of plaintiff and his wife and the transaction on the part of Mrs. Jenkins was without the knowledge or consent of her husband, and even though it should be held that Gregory practiced a fraud upon her in such transaction. The facts recited above were proven without controversy.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered in appellant's favor.