**MINCHEN**

v.

**FIRST NAT. BANK OF ALPINE et al.**

No. 4956.

Court of Civil Appeals of Texas. El Paso.

Dec. 2, 1953.

Rehearing Denied Dec. 30, 1953.

cover funds of the bank which had been embezzled by its employee, John Clanton, and expended by Clanton on improvements on appellant's ranch. Appellee also sought to fix and foreclose an equitable lien against the entire ranch of appellant consisting of some forty-five thousand acres of land in Brewster County securing the repayment to it of the money expended by Clanton for such improvements. Trial was to a jury and on answers to special issues the court rendered judgment against appellant for funds expended by Clanton after notice to appellant of the ownership of said funds on October 15, 1947, for $36,999.24, plus interest at the rate of six per cent per annum from the date said funds were so expended to the date of the judgment in the sum of $8,631.83, or a total sum of $45,631.07, and fixed and established in favor of appellee and John W. Gillett equitable liens on defendant's ranch containing 45,440 acres of land in Brewster County.

The jury findings were (1) Without the improvements the reasonable rental value per acre of the Maurice Minchen Ranch over the period of time it was occupied by John Clanton and continuing until possession of the ranch was returned to Minchen in April 1950 was 5¢ per acre per annum; (2) the reasonable market value of the ranch was increased as of the date possession thereof was delivered to Minchen in April 1950 by the improvements previously placed thereon by Clanton with funds of the bank in the amount of $56,800; (4) at the time Clanton was placing the improvements on the Minchen ranch Minchen had notice that moneys of appellee bank were being spent by Clanton in payment for such improvements; (5) Minchen had such notice in October 1947.

When referring to the proceedings in the trial court the parties will be designated as plaintiff and defendant, and when referring to proceedings here as appellee and appellant.

Appellant predicates his appeal upon sixteen points. The first is that the court erred in admitting the audit of an

Swearingen & Bledsoe, Marfa, for appellant.

Burges, Scott, Rasberry & Hulse, El Paso, for appellees.

McGILL, Justice.

This suit was brought by the appellee bank and John W. Gillett, its liquidating agent, against Maurice Minchen, to re-

auditor appointed by the court, over defendant's objection. From appellant's brief it is very difficult to tell just why he claims the court erred in admitting the auditor's report. Turning to the objections which were brought forward in the amended motion for new trial, the first (3a) is that the audit shows on its face that it is not a statement of accounts between the parties, but an effort on the part of the auditor to show the greatest amount of money that was spent on defendant's property, disregarding the instruction to list only such amount as "improved" the defendant's property. This objection is too general to warrant consideration except insofar as it complains that the audit disregards the instructions to list only such amount as "improved" the defendant's property. This objection is inconsistent with objection (3c) which complains because the auditor mistakenly concluded that all money alleged to have been spent on defendant's property was spent for improvements, such conclusion being outside of the court's instructions and directions to the auditor.

 The order appointing the auditor was based on stipulations of the parties and authorized and directed the auditor (Tr. p. 78) to

"* * * examine into, investigate, and analyse (1) the accounts, books, and records of The First National Bank of Alpine and John Clanton, deceased, (2) the public records, (3) the books and records of Maurice Minchen, (4) the records of persons, firms, or corporations with whom John Clanton did business or from whom he borrowed money, (5) the records of the estate of John Clanton, deceased, for the purpose of (a) stating the accounts between the parties to this suit under the Order and direction of this Court, (b) ascertaining the amount and value of the assets, property, securities, credits, or monies of The First National Bank of Alpine, if any, used by the said John Clanton in improving the ranch of defendant Maurice Minchen, (c) ascer-

taining the property sold off of the premises of Maurice Minchen by the administrator, Neville Haynes, and the prices received therefor."

The direction to ascertain the value of the assets, etc. of the bank used by Clanton in improving the ranch of defendant is explicit. The evidence was ample to support such value of funds of the bank traced to improvements of defendant's ranch of a more or less permanent nature, such as fencing, corrals, buildings, storage tanks, trees, grass, seed, and a dry water well, totaling $39,990.48. This was in strict compliance with the terms of the order appointing the auditor to which defendant agreed and by which he is of course bound. Gulf & B. V. R. Co. v. Winder, 26 Tex.Civ.App. 263, 63 S.W. 1043, writ refused. The objections that the auditor did not go upon the premises to inform himself concerning the improvements and their condition or whether they had been destroyed and hence did not constitute improvements are without merit, since there was no direction to determine the value of improvements, but merely the value of the assets, etc., of the bank that were used by Clanton in procuring them. Hence it would have been outside of the scope of the duties of the auditor to ascertain the value of the improvements, and their value was immaterial, since defendant's liability depended upon whether he had knowledge or notice of the use of the bank's funds in the purchase of the improvements, or of such facts as if diligently pursued would have led to such knowledge and the amount of the bank's funds which were so used, and a physical inspection of the premises would have been of little if any help in determining the amount of funds so used. The objection that it was not shown that the books and records examined by the auditor contained original entries of the transactions audited and that they were pertinent to the business in question is not sustained because such showing was unnecessary. Richie v. Levy, 69 Tex. 133, 6 S.W. 685; Whitehead v. Perie, 15 Tex. 7. For like reason the objection d(c) that the auditor took into consideration only

the figures produced by plaintiffs from the records of the bank and cannot represent a fair basis for the auditor to state the accounts between the parties is without merit. Defendant by excepting to the report on the ground that the evidence was insufficient to support it would have been afforded an opportunity to rebut the report by other evidence. In our opinion the audit was admissible, and the court did not err in admitting it.

The second point is that the court erred in refusing to declare a mistrial because of the testimony of Zeb Decie and John W. Gillett concerning a proposed settlement of plaintiff's claim against defendant. Zeb Decie, a witness for plaintiff, testified that some time after Clanton's death defendant asked him if he and Mr. Gillett could meet, and that they did meet that evening in the directors' room of the bank, then the following occurred:

"Did you discuss with him at that time the claims of the Bank against Mr. Minchen and his ranch? A. I don't exactly say that we discussed the claims as of the bank, no.

"Q. What was that discussion? A. What was what?

"Q. What was the discussion you had? A. We talked around about four or five hours, and Mr. Minchen said that—he finally came up and says 'I came up to talk about a settlement—'

"Q. Don't say anything about a settlement or anything of that sort, Mr. Decie."

Upon request of plaintiff's counsel the court instructed the jury to disregard Mr. Decie's mention of a settlement. Later, upon direct examination of plaintiff's witness John Gillett, the following occurred:

"Q. Did you later have any conversation with Mr. Minchen? A. Yes, sir.

"Q. On what occasion? A. That was on the occasion when Mr. Min-

chen had asked Zeb for a meeting between Minchen and myself and Zeb.

"Q. For what purpose? A. To talk over a settlement.

"Q. Was it to discuss the claims of the Bank that had been made against Mr. Minchen?"

Defendant then moved the court to declare a mistrial and the motion was overruled. Defendant did not ask the court to instruct the jury to disregard Gillett's reference to a settlement and no such instruction was given. Following this testimony, on cross-examination of defendant by plaintiff's counsel the following appears:

"Q. So now, Mr. Minchen, you say you didn't mention anything to Mr. Decie or Mr. Gillett about what those things meant to you, at that time. That is, this matter of putting these improvements on that land, when he hadn't worked out a lease with you. You didn't say anything to Mr. Gillett, or to Mr. Decie, about what you thought at that time because these improvements were being placed on the property? A. There was an exchange of ideas and impressions.

"Q. Sure there was, and you said you had the impression from what he was putting on your ranch, and from the fact that you weren't putting any money on it, that he was getting money from the bank, didn't you? A. No, sir.

"Q. You say there was an exchange of ideas and impressions? A. Yes, sir.

"Q. What sort of ideas did you exchange with them, at that time? A. Those conferences had to do about a settlement. I don't care to bring up the conversations. You were present at the principal conferences yourself."

■ Appellant earnestly insists that this record affirmatively shows that the court erroneously admitted evidence of an offer of compromise of a disputed claim

by defendant which was highly prejudicial to him. Appellee counters that the references to "settlement" by Decie and Gillett did not constitute error because such references did not necessarily reflect an offer to compromise a disputed claim by defendant, and that even if it did the error could have been cured by an instruction which was given as to Decie's testimony, but waived as to Gillett's; also such error, if any, was waived by defendant's voluntary testimony that he discussed "settlement" with the witness on the same occasion. We think the mere reference to "settlement" did not necessarily imply that an offer of compromise was made by defendant, or that his purpose in seeking the meeting was to make an offer of compromise. Certainly the testimony which this court held did not necessarily imply an offer of compromise in Crawford v. Ramey, Tex.Civ.App., 13 S.W.2d 747, i. e., that Crawford had offered to pay one-half of the amount for which Ramey was suing was far more cogent as showing an offer of compromise than the mere reference to a settlement. We should overrule this point on this ground alone. See also Pope v. Ansley Realty Co., Tex.Civ.App., 135 S.W. 1103. However, we think the other reasons given by appellee are also valid grounds for overruling it. See On Failure to Request Instruction, Loughry v. Hodges, Tex.Civ. App., 215 S.W.2d 669, loc. cit. 674 (11, 12), w. r. n. r. e.; Winnsboro Cotton Oil Co. v. Carson, Tex.Civ.App., 185 S.W. 1002; Merchants' Cotton Oil Co. v. Acme Gin Co., Tex.Civ.App., 284 S.W. 680; On Voluntary Testimony of Defendant, Security Banking & Investment Co. v. Flanagan, Tex.Civ.App., 241 S.W. 702, loc. cit. 705.

We shall not labor the matter further, as appellees have done, but overrule the point.

The third point is that the court erred in permitting the witness Spencer to testify as to the enhanced value of defendant's land because of the improvements placed thereon by Clanton. The specific objection was to the witness' answer to a hypothetical question to effect that the placing of such improvements on the defendant's ranch increased the value of the ranch from $2 per acre to $3.50 per acre, or enhanced the value of the entire ranch $1.50 per acre. The objection stated that the witness had not qualified himself to answer the question, he having had no similar experiences with such lands in Brewster County, and never having seen the premises asked about, and because the improvements had not been described with sufficient certainty, and the hypothetical question was too broad because it did not attempt to identify the particular area of the ranch with reference to the improvements, but to cover the ranch as a whole.

█ It would unduly prolong this opinion to set out the hypothetical question. We think it was not subject to any of the stated objections. The evidence showed that the witness had lived in the county twenty-one years, was a real estate and loan broker handling loans and savings concerning ranchers in the county where the land involved was situated, was personally familiar with the ranch prior to its improvements, knew its sale and rental value there, and knew the value of the lands in its vicinity at the time of the trial. This showing was sufficient to qualify him as an expert witness to give his opinion as to the amount the improvements enhanced the value of the ranch. Texas Law of Evidence, McCormick & Ray, Sec. 638, pp. 808–9; Id. Sec. 634, p. 799.

█ The fourth point complains of the court's refusal to sustain plaintiff's objection to Special Issue No. 1 which inquired as to the reasonable rental value per acre of defendant's ranch without the improvements placed thereon by Clanton during the time it was occupied by Clanton. The objection was that the issue had no place in the case—was incomplete and indefinite, and because the question was as to the rental value of the land before being improved and after being improved, and the issue limited the rental value to before being improved. These objections are not

sustained. It was necessary to ascertain the reasonable rental value of the ranch without the improvements since defendant paid nothing for the improvements and under plaintiff's theory he had notice that they were paid for with funds embezzled from plaintiff, and because even without such notice he was unjustly enriched. The issue determined the extent of such unjust enrichment.

The fifth, seventh and ninth points are briefed together. They are (fifth) that the court erred in refusing to sustain defendant's objection to Special Issue No. 4; (seventh) erred in refusing to give appellant (defendant's) requested Special Issue No. 7; and (ninth) erred in refusing to give defendant's requested Special Issue No. 9. Special Issue No. 4 and the instruction given in connection therewith were:

"Do you find from a preponderance of the evidence that at the time John Clanton was placing the improvements on the ranch of Maurice Minchen the said Maurice Minchen had notice that monies of The First National Bank of Alpine were being spent by John Clanton in payment for such improvements?"

"In connection with the foregoing special issue you are instructed that by 'Notice' as used therein is meant actual knowledge or a knowledge of such facts or circumstances which would cause an honest and prudent person in a like situation to make inquiry, which, if diligently pursued, would lead to a discovery by him of the true situation."
The objection thereto was:

"To Special Issue No. 4, because said issue does not specify that defendant Maurice Minchen had actual notice, the term 'notice' being indefinite and uncertain, and to the word 'honest' because this is not the test of the issue submitted and is misleading and uncertain, and because the same does not preclude speculation, vague and undetermined rumor and suspicion and

places a greater burden on the defendant Minchen than is warranted by the evidence and the law governing the case."

Requested Special Issues Nos. 7 and 9 and the instructions given in connection therewith were:

"Do you find from a preponderance of the evidence that defendant Minchen had actual notice of the alleged embezzlement of John Clanton during his lifetime?

"In this connection you are charged that the term 'actual notice' is notice brought directly home to the party, or when the party to be affected by it, after first being put on inquiry, might, by the use of reasonable diligence have informed himself of the existence of such facts."

"Do you find from a preponderance of the evidence that defendant Minchen had sufficient notice of the alleged embezzlement of John Clanton, during his lifetime, to put an ordinarily prudent person on inquiry of the alleged embezzlement, and following the inquiry would have found the facts proven in this case?

"You are instructed in this respect that vague and undeterminable rumor or suspicion is not sufficient to charge one with such notice."

The first point raised by the objection to Special Issue No. 4, by the most favorable construction to appellant of the objection, is that the issue should have inquired whether appellant had actual notice or notice of facts and circumstances putting him on inquiry. Actual notice and notice of facts and circumstances requiring inquiry amounts to the same thing in law. Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628. The instructions given in connection with the issue met the requirements of the cited case in this respect, as well as in the use of the word "honest", of which appellant complains. The refusal to instruct that vague and un-

determinable rumor or suspicion was not sufficient to charge one with actual notice was proper. Such an instruction would have been a comment upon the weight of the evidence. For like reason the court did not err in refusing to give defendant's requested Special Issues 7 and 9.

■■■ The sixth, eighth and tenth points are likewise briefed together. The sixth point is that the court erred in refusing to sustain defendant's objection to Special Issue No. 5; the eighth that the court erred in refusing to give his requested Special Issue No. 8; and the tenth that the court erred in refusing to give his requested Special Issue No. 10. Special Issue No. 5 and the objection thereto was:

"At what time do you find from a preponderance of the evidence that the defendant, Maurice Minchen, had such notice? Answer by month and year."

"To Issue No. 5 because there is no pleading or evidence bearing on the element of time, if any such notice was or could have been placed; because the same leaves the issue to the speculation of the jury in the absence of any testimony bearing on this issue."

Requested Special Issues Nos. 8 and 10 were:

"What month and year do you find that the defendant, Minchen, first obtained notice, or should have obtained notice after being put on inquiry, of such embezzlement?"

"You are instructed in this respect that vague and undeterminable rumor or suspicion is not sufficient to charge one with notice, or to put one on inquiry of another's actions."

"What month and year do you find defendant, Minchen, would have obtained knowledge or notice of the alleged embezzlement of John Clanton, if such inquiry had been pursued?"

"You are instructed in this respect that vague and undeterminable rumor

or suspicion is not sufficient to charge one with such notice."

Though not free from doubt, we think defendant's objections were sufficient to present for review his contention that there was no evidence to raise Special Issues 4 and 5 submitted by the court; the question of sufficient evidence to support the jury's answers to these issues is not presented. This is the crucial question in the case as we see it. The facts are fairly summarized by appellee:

"In 1946, John Clanton, whom Appellant knew to be Assistant Cashier of the bank, took possession of Appellant's 45,440 acre ranch under a lease for one year. For this first lease Clanton was to pay and did pay Appellant a rental of 5¢ per acre. There was no provision in this lease providing for the lessee to make any improvements on the ranch. Appellant's agent in the renting knew that Clanton was only an Assistant Cashier and ostensibly had no property other than his salary.

"During the first year of Clanton's use of the ranch he began to erect permanent improvements thereon. Appellant was aware of the making of these at the time and had similar knowledge as to all the other improvements erected later. In October of 1947, when Clanton's lease was terminating and while he was attempting to negotiate for a further lease, he wrote Appellant of the improvements that had been made, those then in the process of building and those he intended to make, including twenty-five miles of fence and numerous tanks. Clanton did not succeed in getting a further lease until October 11, 1949; during the interim he was merely a holdover tenant or tenant at will. But despite this, he spent $45,975.48 in making permanent improvements to the ranch, substantially all of which was spent while he was merely a holdover tenant or tenant at will. These monies he embezzled from Appellee Bank. Appellant ad-

mitted that there was no explanation why Clanton put on these improvements. The evidence shows conclusively that while Clanton was erecting the improvements he was merely holding over from the original lease at first and later was a tenant at will. The import of this evidence is obvious. Appellant knew that Clanton was spending vast sums of money on his ranch in permanent improvements and admittedly there was a conscious questioning of why Clanton would spend so much money. (Appellant's agent in the matter expressed to Appellant the opinion that Clanton was 'crazy'). Appellant was a lawyer and knew that he could evict Clanton on short notice. * * *

"Appellant maintained a large checking account in the bank, some $40,000.00, in fact. For a period of eight months prior to December of 1947, he could not obtain a statement from the bank in spite of the fact that he had written checks on the account and had requested his statements. Appellant admitted that he thought this was 'peculiar' but he said he was reluctant to report the matter because in his opinion he had no 'facts' to go on, although in truth and in fact he knew 'facts' which would have been most interesting to the bank. * * *

"In October of 1947, Clanton made an unauthorized deposit of some $3,000.00 in rent money to Appellant's account in an attempt to obtain an automatic extension of his lease without Appellant's consent. Appellant demanded an explanation from Clanton, but he never received it. Appellant never mentioned this to the Bank.

"But the evidence goes further than this. Appellant on several occasions admitted that he had thought something was wrong because Clanton was spending too much money; and that he thought it was the Bank's money. When asked why he had said nothing to the bank officials, he answered once that such action by him would have been dangerous and later that he had told his agent and assumed the agent would talk it around so that word would reach the bank. * * * The tenor of the admission itself shows that it referred to a time prior to Clanton's death. In any event, this was a question to be resolved by the jury. * * *

"In February of 1948, Appellant's agent wrote him: 'He is still spending money on the place just like he owned it, and I think it would be best to trade with him some way as he sure is spending for a renter'; then on May 2, 1948: 'Clanton is still spending money on place for you just like the ranch was his. I will take you over it and show you something when you are here and am sure you can trade with him some way when I talk to you. He never mentions it to me anymore'; and in July of 1949: 'Renter Clanton has bought a new bigger tractor and still building tanks. He is very crazy but is okay fir you'."

It is our conclusion that this evidence did raise Issues 4 and 5 and that the court did not err in submitting them.

Appellant's points erroneously designated as the seventh to eleventh are that the court erred in refusing to give defendant's requested Special Issues Nos. 11 to 15 inclusive. Requested Special Issue No. 11 inquired what improvements, if any, were placed on defendant's ranch by Clanton with money embezzled from plaintiff bank before defendant received notice, if any, of the alleged embezzlement. The refusal of this issue was proper for the several reasons pointed out by appellee, i.e., it does not place the burden of proof; there was no dispute as to when the improvements were made; and plaintiffs' theory of unjust enrichment was submitted by Special Issue No. 2 of the court's charge. Requested Special Issue No. 12 inquired as to the reasonable market value of the ranch lands before being improved and after being improved. This issue covered

substantially the same matter submitted by Special Issue No. 2 and defendant by stipulation waived any objection to the form of such issue; therefore there was no error in the court's refusal to submit requested Special Issue No. 12.

 Requested Special Issue No. 13 conditioned on negative answers to Special Issues 7 and 9 (evidently meaning requested special issues 7 and 9) inquired what permanent improvements were placed on defendant's ranch by Clanton under the terms of any lease calling for improvements to be made as part of the consideration for such lease, and in connection therewith instructed that under a lease between lessor and tenant to make specified improvements the lessee was required to spend a reasonable amount of money and labor to construct improvements such as are in general use in the locality. The requested instruction was clearly erroneous as it would have rendered the lease void for uncertainty. 10 Tex.Jur. Sec. 101, p. 175. For this reason alone the court did not err in refusing to submit this requested special issue.

Requested Special Issue No. 14 inquired:

"What permanent improvements, if any, were placed on the ranch of Maurice Minchen by John Clanton other than specified in the lease in evidence in this case?"

The evidence shows conclusively that all improvements placed on defendant's ranch by Clanton were so placed prior to the execution of the lease of October 11, 1949, which was the only lease that specified any improvements, hence the matter inquired about in requested Special Issue No. 14 was not in issue and the court properly refused submission of this requested special issue.

Requested Special Issue No. 15 is identical with requested Special Issue No. 12, and what we have said relative to that issue is applicable to requested Special Issue No. 15.

Appellant's last point is that the court erred in refusing to set aside the verdict of the jury since it appeared that the verdict was contrary to the evidence and against the law of the case. This point is too general to warrant consideration. It presents nothing for review.

All of appellant's points are overruled, and the judgment of the trial court is affirmed.

FRASER, J., did not participate in the disposition of the above case.