COMMONWEALTH BONDING & CASU-
ALTY INS. CO. et al. v. THURMAN.
(No. 773.)

(Court of Civil Appeals of Texas. Amarillo.
May 1, 1915. Rehearing Denied
May 22, 1915.)

1. CORPORATIONS ⬨78 — STOCK SUBSCRIP-
TIONS—LIABILITY TO SUBSCRIBER.
    Where a contract for a subscription to
stock in a corporation to be formed provided
that the subscriber should, as soon as the cor-
poration was organized, pay a fixed sum to it
in cash or approved securities, and that he
would pay to the organizers immediately an
amount as his contribution to the expenses of
organization, the contract was severable, and
the corporation was not liable, after refusing
to accept the subscription, for the return of
the sum paid to the organizers; since it did
not ratify that contract.
    [Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 219–231, 420–424, 429–434; Dec.
Dig. ⬨78.]

2. CORPORATIONS ⬨30—ORGANIZATION—PRO-
MOTERS.
    The promoters of a corporation cannot pro-
cure the payment of a bonus to themselves as

commissions and charge it to the corporation
when formed.
    [Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 97–100; Dec. Dig. ⬨30.]

Appeal from District Court, Hemphill
County; F. P. Greever, Judge.

Action by A. W. Thurman against the
Commonwealth Bonding & Casualty Insur-
ance Company and another. Judgment for
the plaintiff, and defendants appeal. Re-
versed and remanded.

McLean, Scott, McLean & Bradley, of Ft.
Worth, and Hoover & Dial and Frank Wil-
lis, all of Canadian, for appellants. Fisher
& Palmer, of Canadian, for appellee.

HUFF, C. J. Thurman instituted suit in
the justice court of Hemphill county against
the appellants, the Commonwealth Bonding
& Casualty Insurance Company and the
Commonwealth Organization Company, a
firm composed of R. T. Stuart and Coke
Harkrider. He obtained judgment in that
court, from which judgment the case was
appealed to the district court, which had
jurisdiction of appeals from the justice court,
in that county, and in which latter court he
obtained a judgment for $125, with interest,
etc.

The suit was brought by Thurman against
the appellants for $125, being a sum of mon-
ey paid by him to the Organization Company
on a subscription for stock to the Common-
wealth Bonding & Casualty Insurance Com-
pany. The contract sued on is a receipt, as
follows:

    "Received of A. W. Thurman, of Canadian,
Texas, 11/4/10, the sum of $125.00, which is
12½ per cent. of total subscription as part pay-
ment of twenty-five one-tenth shares of stock
in the Commonwealth Bonding & Accident In-
surance Company of Ft. Worth, Texas, so set
forth in his subscription application, same num-
ber as this receipt, bearing even date herewith.
Should said subscription be not approved and
accepted, the amounts paid as per this receipt
will be returned. Not valid unless countersign-
ed by C. S. McDonald, financial representative."

Signed by the Commonwealth Organization
Company, by its secretary, and countersign-
ed by Charles S. McDonald.

The appellee, Thurman, alleged:

    "That said Commonwealth Bonding & Cas-
ualty Insurance Company was chartered on
or about January 1, 1911, and soon after the
incorporation of said company it disapproved
plaintiff's subscription for stock and refused to
accept the same, and rejected his subscription
to stock in said company."

It further alleges that:

    "The Commonwealth Organization Company
was the agent and representative of the Com-
monwealth Bonding & Casualty Insurance Com-
pany, and made the acts of said firm its own,
ratified the acts of said firm, and especially the
acts with plaintiff herein, and it accepted the
benefits arising therefrom, and is liable to plain-
tiff for the amount paid by him under said
subscription for stock, as hereinbefore set forth."

The contract which he executed at the time of getting the receipt is as follows:

"Commonwealth Bonding & Accident Insurance Company.

"Capital $10.00          Surplus, $30.00

"Subscription to Capital Stock.

"No. 1226.

"Whereas, Commonwealth Organization Company of Ft. Worth, Texas, are promoting the organization of a casualty bonding and accident insurance company, to be incorporated in pursuance of the laws of the state of Texas, under the name of Commonwealth Bonding & Accident Insurance Company, or such other name as may be selected, with an authorized capital stock of three ·hundred thousand dollars, and a paid-up capital of at least two hundred thousand dollars, paid up and free from organization expenses, all in accordance with a printed prospectus issued by them and delivered to me.

"And whereas, by their acceptance of this subscription said Commonwealth Organization Company agree to endeavor with all reasonable diligence to accomplish on or before December 31, 1910, the organization of said corporation with capital stock fully paid up as aforesaid, they to defray all expenses of the organization and incorporation:

"Now, therefore, I do hereby subscribe to twenty-five one-tenth shares of the par value of ten dollars each of the capital stock of said Commonwealth Bonding & Accident Insurance Company, and agree with said company and the said Commonwealth Organization Company to pay therefor the sum of one thousand dollars, as follows: The sum of eight hundred and seventy-five dollars I agree to pay in money or securities satisfactory to the insurance department, with 6 per cent. interest, to said Commonwealth Bonding & Accident Insurance Company, or its trustees at Ft. Worth, Texas ·(which goes to capital and surplus), at any time after November 1, 1911, immediately upon receipt of notice from said Commonwealth Organization Company that its capital stock has been subscribed in good faith in amounts and at rates netting the company at least two hundred thousand dollars of capital in the aggregate when paid. The remaining sum of one hundred and twenty-five dollars I agree to pay and do pay concurrently with this subscription to the said Commonwealth Organization Company, in consideration of their agreement hereinbefore recited, and in lieu of any further or other contribution to expenses of organization and incorporating said Company.

"No conditions, representations, or agreements other than those printed herein shall be binding on Commonwealth Organization Company or the Commonwealth Bonding & Accident Insurance Company.

"Witness my hand this the 4th day of November, 1910.          A. W. Thurman.

"Witness: Chas. S. McDonald."

[Name of Subscriber.]

The Commonwealth corporation, appellant, refused to recognize Thurman as a stockholder in the company, he claiming that he offered to execute his note for the amount specified in the contract with deed of trust on 320 acres of land, they demanding deed of trust on 630 acres. Stuart, for the Commonwealth Organization Company, testified that the corporation had accepted Thurman's subscription contract. The testimony by the secretary of the Organization Company is to the effect that the corporation did not so accept the subscription, and there is some evidence showing that Thurman's name is not on the books of the corporation as a stockholder, and has never been.

[1] The trial court rendered a judgment against both the Organization Company and the corporation for the amount sued for. The subscription contract is clearly severable. The appellee agreed with the Organization Company that, in consideration of their services rendered and to be rendered, he would then pay $125, the receipt of which was acknowledged, which was recited to be in payment of the organization expenses. This sum clearly was not, and never was to be, paid to the corporation thereafter to be organized. The corporation received no benefits from this money. The Organization Company undertook to procure the proposed corporation to accept appellee's proposition, that is, to pay $875, or give his note with security satisfactory to the insurance department, and the appellee agreed so to pay or secure the amount to the corporation. This last sum was for the proposed corporation and for its corporate use and purposes. The $125 was not paid it, nor to its then agents. The corporation then had no existence; hence could have no agent. If it ratified any contract after its organization, it was the contract to pay $875 or to give security satisfactory to the insurance department. Until appellee did this he was not entitled to stock in the corporation, and had no right to demand it. There was no contractual relation between the corporation and appellee, according to appellee's allegation; that is, that the corporation refused to accept his subscription. If it accepted the contract made by the Organization Company, it was the proposition of appellee to pay or secure $875 to the company. If appellee had any cause of action against the corporation after its formation, it was for the breach of the contract to issue stock after the acceptance of his subscription. He had no cause of action against it for the contract he made with the promoter to organize such company for the services performed in such work. The promoters procured this money for their special benefit, and appellee paid them with such understanding, which is clearly expressed by the instrument he executed.

[2] We do not think promoters who, for their own interest, get up a corporation, can procure for themselves a bonus as commissions and charge it upon the corporation when formed. This would be a breach of faith towards honest stockholders who pay the charter price for the stock, with the expectation of getting it clear of incumbrance. "The only protection of the stockholders and subsequent corporate creditors against such a rule lies in the rule that the corporation is not bound by the contracts of its promoters." Cook on Corporations, § 707, vol. 3; 10 Cyc. 262(2); American Home Ins. Co. v. Jenkins, 138 S. W. 424, and authorities cited; Commonwealth, etc., v. Cator, 175 S. W. 1074, by this court, not yet officially published. The

claim appears to be in this case, because the company accepted the subscription contract, that it ratified all the contract of the promoters with appellee. This instrument evidences two contracts. One is with the promoters to pay a bonus; the other embodies a proposition to the proposed corporation, and, if accepted, becomes a contract, and to that extent ratifies the act of the promoters. but we do not think it can be successfully contended that the acceptance of the proposition is a ratification of the contract with and for the promoters, or that it will make the corporation liable for the money paid as commissions on the contract with the promoters. If the proposition was, in fact, accepted by the corporation, the Organization Company was not required to return the money paid as commission to it. If it was not accepted, the Organization Company alone is liable, and no liability can attach to the corporation. If the corporation accepted appellee's proposition, then appellee is entitled to a certificate of stock when he pays the sum he agreed to pay the corporation or gives security satisfactory to the insurance department. If he, in good faith, has offered to comply with his proposition, and the corporation, after acceptance, declined to comply by issuing stock, then his action is against the corporation upon the proposition made to it and accepted, and not upon the contract the promoters made with him to return the money received by them. Upon the proposition to the corporation and its acceptance, he could file his bill, compelling the corporation to issue the stock or to sue the corporation thereon for breach of contract; in either of which events he must show he has complied with his proposition; that is, paid the money or given his note with security satisfactory to the insurance department. By his proposition he has designated the party who should be satisfied with the security. If for any reason conditions have so changed that it was not practicable to have such approval, then he should allege and prove the changed conditions. If, as a matter of fact, the appellee has not complied with his proposition or his undertaking, he is not in a position to enforce compliance on the part of the corporation or for damages on account of breach. The fact that he thought the securities sufficient did not entitle him to the stock. He proposed to satisfy the insurance department.

The Bomar Case, 169 S. W. 1060, cited by the parties, rests upon an entirely different state of facts to this case. In that case the facts show that the Organization Company and the corporation were acting together in the sale of the contract, and both participated in the fraudulent representations inducing the contract. It was simply held, as to the Organization Company, that both parties being in pari delicto, there was no right of contribution in favor of the one wrongdoer over against the other. This holding was based upon a familiar rule. In this case the Organization Company is liable on its contract to return the money paid to it by appellee if the proposition to take stock was not accepted by the proposed corporation when organized. We do not think the corporation in privity with that contract, and should not be held liable thereon. It is liable, if at all, upon the contract it made with appellee in accepting his proposition to pay the $875.

It occurs to us that the confusion is occasioned in this case in seeking to hold the corporation liable as the principal of the Organization Company. This it was not, and by accepting the proposition made it does not ratify or make the contract to return $125 its contract, for the reason that it did not receive the benefit of that money, which was paid by appellee to obtain the services of the promoters. As seen, appellee alleges that the corporation did not accept the contract. If it did not, then there is no rule that would render it liable. The promoters were not its agents. The corporation was not in existence, and the contract signed by appellee itself shows that fact. The mere fact that any other subscriptions made to the corporation were accepted did not make the promoters its agents in this transaction.

The case will be reversed and remanded.