Parker C. J.
delivered the opinion of the Court This 's a bill in equity praying a decree to enforce the specific performance of an award, made pursuant to a submission by the parties in writing under seal, in the form of an agreement or covenant, with a penalty for the non-performance by either party. The submission, or agreement to submit, relates to a controversy respecting the title and boundaries of a lot of land or flats, situated upon or in the mill pond, and claims of damages which the plaintiff set up against the defendants for the appropriation of part of the land for streets, for which the defendants had become answerable by virtue of a contract with the city of Boston, and also damages for the diversion, interruption or destruction of a water avenue from this land to the bay or river, which formerly existed. Considering the state of the property, title and possession of the land, the condition of the parties in relation to it, and the effect of the alterations in that part of the city, whereby a large basin or pond of salt water had been converted into streets and sites for building and business, there certainly could be no more suitable subject of arbitration ; and the very judicious choice of arbitrators would seem to have promised an acquiescence in the result of their investigation and deliberation upon the subject. But one of the parties has declined executing the award, by which the title to a specific portion of the land is confirmed to the other, and a deed of release thereof awarded ; and the party who prevailed to this extent before the arbitrators, seeks redress from the chancery jurisdiction of this Court, conferred by St. 1817, c. 87.[1] A demurrer to the bill has brought the question before us, whether by virtue of that statute the Court has jurisdiction of the subject matter of this bill, and the power to enforce, by a decree, the specific performance of this award, so as to direct the execution and delivery of a release according to its provisions.
The power of this Court over subjects appertaining to chancery jurisdiction in England, is undoubtedly special and limited, in regard to the objects on which it is to operate, *527 but in relation to such subjects, it is general and unlimited ; the legislature having granted the power without restriction, and without any direction as to the manner in which it shall be exercised ; thus, by necessary implication, conferring all the authority and power which is enjoyed or exercised by tribunals which entertain this jurisdiction in England, so far as consistent with the provisions and principles of our constitution and the general laws of the commonwealth. By establishing a court of equity with general jurisdiction, without prescribing the forms of process, or the manner of proceeding, such a court would necessarily adopt the principles and rules of practice of courts of a like character in England, because that always has been the source to which the courts here have been obliged to apply for principles and rules of practice, in all cases in which our legislature have granted judicial power and authority without limiting or prescribing the form, manner and extent in which it shall be exercised. The St. 1817, c. 87, after specifying the sub jects of equity jurisdiction committed to this Court, provides that it shall have authority to issue all such writs and processes as may be necessary or proper to carry into effect the powers granted, and to make, from time to time, all necessary rules and orders for the convenient and orderly conducting of the said business : provided the same be not repugnant to the constitution and laws of the commonwealth. And in regard to process, the Court is to be governed by the course of proceedings in the courts of chancery; which, as no such courts existed in this commonwealth, must necessarily refer us for the developement and use of the extensive power thus given, to the courts in other states and countries, particularly to those of Great Britain, which without doubt are the prototypes of chancery tribunals in the United States, and in the several States wherein such tribunals exist.
There can then be no defect of power to carry into effect any decree of this Court upon any subject within its jurisdiction, as given by the statute which first extended the equity power of this Court beyond the subject'of mortgages. And this answers one of the arguments in support of the demurrer, which urged the incompetency of the Court to enforce its *528 decrees against corporations, on account of its inability to use such compulsory process as co.urts of chancery employ in like cases in England. If a distringas, sequestration, or other form of process, should become necessary to the due and complete execution of a decree against a corporation, this Court is authorized by the statute to devise and issue such process, and there can be no doubt, that in all other respects, our corporations are among the most suitable objects for the application of chancery power, in such cases as by the statute are brought within this jurisdiction. This was the last of the three points stated as comprising the objections to the jurisdiction of the Court in this particular case, but it was convenient to dispose of it first; and I will now proceed to consider the others, which may require more particular -consideration.
The objection most likely to occur in this early administration of chancery jurisdiction in this Court, rests upon an express limitation of the power of the Court on one of the subjects committed to its jurisdiction.
The words of the statute are, “ The justices of the Su preme Judicial Court shall have power and authority to hear and determine in equity, all cases of trusts arising under deeds, wills, or in the settlement of estates, and all cases of contract in writing, where a party claims the specific performance of the same, and in which there may not be a plain, adequate, and complete remedy at law.” This qualification seems to relate only to the last branch of the power given, and indeed could not well, in any case, apply to trusts created in the several ways mentioned, for there cannot be a remedy at law in any degree suited to those subjects. And in the case of contracts which require, from their nature, a specific execution, it is clear there cannot be a remedy to which either of the characteristics, plain, adequate or complete, will apply. Without doubt it was the intention of the legislature, in the use of these words, to limit the exercise of the power of decreeing specific execution, to those cases which were recognised as proper subjects of that power in England. There a contract for the payment of money, or for the delivery of goods, wares and merchandise, or an award for the payment *529 oi money or the delivery of chattels, has not been held to be within' this power, or the discretionary use of it, because in such cases the remedy at law in damages for the breach of such contracts is sufficient, and because a specific execution, in most cases, would be attended with inconvenience and sometimes with injury to the party complained of. But with respect to contracts in writing relating to the transfer of real estate, or the making and delivery of deeds relating thereto, it is scarcely possible that the remedy at law, though it may be plain, should be adequate or complete. Damages may be recovered for the breach of such contracts, but there is great uncertainty until they are ascertained by judgment, and then they may fall short of an equivalent; and even if adequate, if the party complaining desires to be quieted in his title to land in possession, or to become the owner, according to the contract of the other party, he cannot be considered as having a complete remedy, except by a specific execution of the contract. A bond therefore with condition to convey an estate, or an agreement in writing, or under seal, for the same purpose, is the most suitable and obvious subject of specific execution, and without doubt was among the most prominent objects, in the view of the legislature, for the operation of this new, and, no doubt, in many respects, useful and necessary jurisdiction.[1]
The next objection is that which has demanded most of the attention of the Court, and about which, from the apparent inconsistency of the authorities cited with each other, there existed considerable reason to doubt.
It is stated as a broad and general proposition, that the courts of chancery in England do not entertain bills for the specific execution of awards of arbitrators, but leave the parties to their suit upon their bond or agreement, or to other remedy at common law. If this be so, we should certainly hesitate to support the bill, whatever might be our opinion of the propriety of rejecting this particular subject from equity jurisdiction ; for as our authority is given in *530 general terms, with explicit reference to the proceedings 01 courts °f chancery existing elsewhere, we should not take upon ourselves to go beyond the acknowledged and practised jurisdiction of such courts in a country where this branch of jurisprudence has been so long and so extensively exercised. But upon a scrupulous examination of all the authorities cited, and others which relate to the subject, we are brought to the conclusion, that there is no such defect of jurisdiction' in the courts of chancery in England as has been stated. Some of the authorities read by the counsel for the defendants would sustain their proposition, if unexplained, and there would then be a manifest and palpable contradiction between them and those which have been cited in support of the bill by the counsel for the complainant. Generally the reports of chancery decisions are much less definite and clear than those of the common law courts, and upon the subject of awards the want of precision and clearness is quite remarkable. We think, however, we are able to trace out the true principle which has governed those courts in relation to this subject, and that upon the whole, there is no doubt that the relief prayed for in this bill would be afforded by the Court of Chancery in England, if there were no solid objections to the award, and in New York, where the structure and proceedings of this tribunal are almost a facsimile of the Court of Chancery in Great Britain.
The first authority cited in defence of the proposition is Bac. Abr. Arbitrament, <^c., H, I. The passage cited is in these words,—“ Nor will a bill in equity lie to carry into execution an award on a voluntary submission, unless there has been an acquiescence in it by the parties to the submission, or an agreement by them afterwards to have it executed.” For this the case in 1 Atk. 62, is cited, and the words of Lord Hardimcke, as there reported, will certainly justify the position. But on examining the case itself, we find that the objections to the bill were not of so general a nature as the above cited dictum imports. Those who prayed for a specific execution of the award were no parties to the submission, though interested in the award. And the subject of award was the payment of money ; which chancery does *531 aot enforce, because the remedy is quite as good at law, an execution from a court of common law being fully competent to the enforcement of payment. We think the words imputed to the lord chancellor were restrained by him to the case before him, and that he did not intend to decide, that in no case could a bill be sustained to execute an award, unless there were a subsequent acquiescence or agreement to perform it. The case cited from 3 P. Wms. 187, shows the loose manner in which chancery cases have been reported. It is stated, that upon opening the case, the master of the rolls said he thought it was a strange bill, for which he knew no precedent, and that the plaintiff must sue his bond ; but yet, upon further consideration, he sustained the bill and decreed performance. In a note to the case it is observed, that these decrees may not have been usual, because awards are commonly to pay money, in which case a bill is improper; but where the award is to do any thing in specie, as to convey an estate, &c., in such case, if the defendant has accepted the money in' satisfaction of the conveyance, it is highly reasonable he should make the conveyance. It will be seen, that by later authorities, this qualification is not insisted on.
The cases cited from 6 Ves.' 34 and Dickens, 66, do not appear to have any bearing on the question.
In 1 Swanst. 54, it is said by the lord chancellor, — “ That a bill will lie for the specific performance of an award, is clear, because the award supposes an agreement between the parties, and contains no more than the terms of that agreement ascertained by a third person ; and then the bill calls only for a specific performance of an agreement in another shape.”
And in 17 Ves. 241, it is said, that if the terms of an agreement are to be ascertained by an award, being so ascertained, that agreement shall be performed in equity.
In 1 Maddock’s Pract. (2d ed.) 401, it is stated to have been held, that if one party performs his part of the award, the other party may be compelled in chancery to perform his (cites 1 Ch. Rep. 142) ; and in the very next paragraph it is said, “ That a bill will lie for the specific performance of an award, is clear,” and the case in Swanston is cited *532 Here there is a manifest discrepancy. The passages maj be reconciled, by supposing that the court of chancery will execute an award, though defective in point of law, if one party performs and the other accepts the performance, and that as to all good awards, it will decree specific execution , for Haddock concludes that part of his subject by stating, that though, if the award directs any thing to be done respecting lands, the court will decree a specific performance, it wall not execute an award for the payment of money.
These latter cases put the subject on its true footing, that is, the specific performance of a contract in writing, for the submission is the agreement. It is virtually a contract to do what shall be awarded, and there does not seem to be any reason why it is not as much the subject of equity power, as if the contract were complete without the interference of an arbitrator. We have no doubt, that where the award is to do a specific thing in relation to real estate, pursuant to the agreement of the parties in writing, the award being valid in law, it is subject to the equity jurisdiction of this Court, within the letter of the statute, without any subsequent assent, express or implied.
And we do not perceive the force of the objections which have been urged. It is said that many exceptions may be taken to the award, which can be settled only by a court of law; but it is clear, by all the authorities, that all these exceptions may be taken as well in the court of equity. It is said also, that matters of fact may he in dispute, which ought to be settled by a jury ; but it may be answered, that these matters may always be referred to a jury, this Court having the power, when sitting as a court of chancery, to direct an issue to the country, whenever the circumstances of the case require such a proceeding. And from the peculiar combination of powers in this court of equity and law, it is less inconvenient, than it would be in ordinary courts of chancery, to settle matters of law or fact, as the circumstances of the case may require. We do not mean by this to express any favorable opinion of this union of powers, for it is obvious, that ere long, the accumulation of chancery business will require a separation ; but constituted as the Court now is, the objection *533 to its equity jurisdiction, arising from the necessity of uetermining questions of law as well as of fact, cannot have much weight.
On the particular case before us, in which the specific performance of an award directing the execution of releases, founded on an agreement of the parties in writing and under seal, is sought for, we are satisfied that the legislature has given this Court authority to adjudicate'; and we leave open all questions concerning the validity of the award in regard to matters of law or fact, determining only for the present, that an award so authorized, assumed to be good in point of law, may be the subject of a decree for specific execution, without any subsequent act of the parties showing a part performance or acquiescence. The demurrer is therefore overruled, and the defendants are put to their answer to the bill.[1]

 See Revised Stat. c. 81, § 8.

 See Jones v. Boston Mill Corp, 6 Pick. 148.

 M'Neil v. Magee, 5 Mason, 256; Jones v. Boston Mill Corp. 6 Pick. 148; ante, 5, notes