SAN BENITO CAMERON COUNTY DRAINAGE DIST. v. FARMERS' STATE GUARANTY BANK et al. (No. 5791.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 14, 1917. Rehearing Denied March 14, 1917.)

1. REFERENCE ⟐⟶24—MASTER IN CHANCERY—RIGHT TO APPOINT.

In view of Rev. St. art. 2156, providing for appointment of masters in chancery wherever a receiver is appointed, and article 70, providing that the parties may arbitrate their differences by any method they may select, it is within the power of the court to appoint a master in chancery by consent of parties.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 40.]

2. REFERENCE ⟐⟶100(3) — STIPULATIONS — BINDING EFFECT.

Where the parties to a suit agree that a master in chancery shall be appointed and that exceptions to his report must be filed within 60 days, they are bound by such agreement, and cannot file exceptions after a greater time has expired.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 159.]

3. DRAINS ⟐⟶49—DRAINAGE DISTRICTS—LIABILITY FOR CONSTRUCTION WORK.

Although a drainage ditch was completed before execution of a construction contract calling for a complete drainage system, the drainage district obtaining the benefit of such ditch is liable to the contractor where the contract provided that its value should be estimated by the engineers.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 59.]

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by the Farmers' State Guaranty Bank against the San Benito Cameron County Drainage District and others. From the judgment, defendant named appeals. Affirmed.

Spears & Montgomery, of San Benito, for appellant. F. W. Seabury, of Brownsville, J. M. Mothershead, of San Benito, and Graham, Jones & George and R. M. Gay, all of Brownsville, for appellees.

FLY, C. J. This suit was instituted by the Farmers' Guaranty State Bank against the Rio Grande Construction Company, San Benito Cameron County Drainage District No. 3, the commissioners thereof, and numbers of others asserting claims against the construction company and against money which appellant owed the construction company, for the construction of a drainage system. Other creditors of the construction company were afterwards made parties or intervened in the suit. The construction company, being insolvent, made no defense, but prayed that the money be paid to the creditors as their interest might appear. The case thus resolved itself into the ascertainment of the indebtedness of the drainage district to the construction company and its equitable distribution among the creditors. The drainage district admits that it is indebted to the construction

company $8,962.12, but denies liability for $11,628.74, found against it for the construction of what is known as the Orizaba ditch, which was built before the contract for construction was executed. The drainage district, however, does not deny that it received full benefit of the ditch, and that it was necessary to the perfecting of the drainage system. Nor is it claimed that it was not a necessary link in its chain of ditches, and that it was not built as required by the plans and specifications.

An application was made on April 7, 1915, by two of the defendants, for the appointment of a master in chancery with such powers as the court might see proper to give him. On the same date an order was entered appointing Harbert Davenport master in chancery and defining his powers and duties. The appointment was made on the agreement of all concerned, and the order was agreed to in all of its terms. One of the items in that order was as follows:

"All findings of fact in the master's report upon the matters referred to shall be considered as binding on all the parties to this suit, and not subject to review by this court unless exceptions thereto are duly taken. Exceptions to the master's report and to his findings therein contained shall be made in writing, addressed to this court; they shall be specific, and shall point out the particular error or errors complained of, and the particular portions of the evidence relied on to support the exceptions; and they shall be filed in this court within 60 days after the filing of the said report."

The order recites that:

All of the parties were present through their attorneys, "and in open court they and each of them consented to the granting of said application and the appointment of such master in chancery, with the specific and general powers and duties therein expressed."

The order was signed by the attorneys for all the parties. No attack is made upon the order, nor is it claimed that the attorneys were without authority to make the agreement embodied in the order. The order is the act of the court with the consent of the parties and with their indorsement of all of its provisions, and the question arises: Is it enforceable against the parties, or can they disregard any or all of its provisions?

[1] In article 2156, Revised Statutes, it is provided that, whenever a receiver is appointed and qualifies, a master in chancery shall be appointed, and his qualifications and duties are prescribed. There is nothing in the statute prohibiting the appointment of a master in other cases, and the appointment in all other cases would be governed by common-law rules. A trial by jury not having been demanded by appellant, this case is in no manner complicated with the right of trial by jury, if a jury trial could have been legally demanded after an agreement that the report of the master should become final after a certain time had elapsed from its filing. No exceptions were filed to the report until 3½ months after it had been filed. It has been held that in states where statutes provide for references by consent to masters in chancery, when a party so consents, he loses his right of trial by jury, but it is held in Texas that the right of trial by jury is not lost in receivership cases, because the law compels the appointment of a master in chancery. San Jacinto Oil Co. v. Culberson, 100 Tex. 462, 101 S. W. 197.

While no statute exists in Texas empowering a court to appoint a master in chancery by consent of parties, there is no inhibition against such a procedure. The court in this case did not of its own motion appoint a master and define his power and duties, but the appointment was made with the full consent of all the parties who voluntarily bound themselves to abide by the report of the master unless exceptions to it were filed within 60 days from the time the report was filed. The choice was not forced upon appellant, but it sought the appointment of the master and agreed that his report should not be attacked unless exceptions to it were filed in a certain time. There can be no doubt that appellant could have agreed to submit all differences to an individual, not calling him a master in chancery, and could agree that it would abide by his decision. It would, in effect, be merely an agreement to arbitrate which would be binding on the parties. Any mode that parties may select to arbitrate their differences is approved by statute. Article 70, Rev. Stats.; Myers v. Easterwood, 60 Tex. 107. In the cited case a suit to settle title to land was pending between the parties, and they agreed that the land should be divided between them as one man, agreed upon, might determine, and the Supreme Court held that the action of the man was binding. The court said that:

While the arbitration was not a statutory one, "the award of the arbitrator is substantially the agreement of the parties, for they each empowered the arbitrator to ascertain and declare the terms of the agreement, and by his award, when fairly made, they ought to be as much bound as though they had made an agreement directly between themselves, embracing the terms of the award."

That was said in a case in which there was no specific agreement to abide by the award if objections were not presented in a certain length of time, and the case is not near so strong as is this case. Fraud is not alleged, and no excuse offered for a failure to comply with the plain terms of the agreement. It is a solemn contract between the parties which is not condemned by any law, and the enforcement of which is approved and commended by equity and good conscience. The parties agreed that the report of the master in chancery should be final, and not subject to review by the court unless exceptions were duly taken before the master and then put in writing and filed in the court within 60 days after filing of the report. No effort is made to excuse or justify a plain and open effort to breach a contract, but it is ignored by appellant, and the report attacked because

it did not conform to the wishes and desires of appellant.

The contract was one not only between the parties, but their faith was pledged to the court, in order to have the appointment of a master in chancery, that the parties would submit to the conditions and requirements embodied in the order. Without the enforcement of the agreement the appointment of a master would have been useless and futile, and the end desired, the avoidance of a long and complicated court trial, would be rendered absolutely nugatory and ineffectual. The enforcement of the agreement is not obnoxious to public policy and invades no public right, but is in the line of expediting judicial business and conserving the time and money of the state. The agreement involved the rights of the contracting parties, and affected the rights of no one else. There is nothing unfair or reprehensible in the contract, but it was entered into for the best objects and purposes, and it should be enforced. If there was any unfairness in the rulings or report of the master, exception should have been made at once. It took appellant over 3 months to discover any unfairness in the report.

[2] We conclude, in the first place, that the appointment of the master in chancery by the district court was legal and proper, and, in the second place, that appellant, having agreed in open court to the appointment, together with all the conditions appended thereto, is bound by such conditions as it would be in any other fair contract. If it should be considered that no authority to appoint a master in chancery is vested in the district court, except in cases of receiverships, then we think the agreement made in open court to appoint a man with powers in regard to the controversy between the litigants would be binding upon the parties to the agreement, and its enforcement is just and proper.

The rule laid down in Ruling Case Law, § 159, p. 752, is that it is permissible to submit to arbitration or other instruments to settle pending lawsuits or existing differences, but it is not permissible to agree in advance that in the event of differences arising in the future they will not resort to the courts for their settlement. That rule is supported by authorities. Myers v. Jenkins, 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. Rep. 613; Insurance Co. v. Hon, 66 Neb. 555, 92 N. W. 746, 60 L. R. A. 436, 103 Am. St. Rep. 725; State v. Timber Co., 106 La. 621, 31 South. 172, 87 Am. St. Rep. 309. As said in the Myers-Jenkins Case:

"After a right has accrued or an obligation has been incurred a party may waive his rights or refuse and neglect to enforce them, or he may by contract bind himself to submit the matter to arbitration or other special remedy. But a party cannot bind himself by contract in advance to renounce his right to appeal to the courts for the redress of wrongs."

It is stated in 36 Cyc. pp. 1289-1291:

"That stipulations may be entered into concerning the trial or hearing generally, as to the time or place of trial, as to the verdict or finding, as to referring the cause, or compromising it in most, but not all jurisdictions, or the submission of issues to the court, as to instructions, as to judgment and enforcement thereof, as to staying execution, and as to review and appeal."

In other words, wherever only private rights, and nothing of a public character, are involved, stipulations in pending suits will be enforced. In the case of Jones v. Boston Mill Corporation, 21 Mass. 507, 16 Am. Dec. 358, where the parties had agreed to submit a matter to referees, the court held in regard to the binding effect of the contract:

"It is virtually a contract to do what shall be awarded, and there does not seem to be any reason why it is not as much the subject of equity power as if the contract were complete without the interference of an arbitrator."

That language is quoted and approved in Myers v. Easterwood, hereinbefore cited.

[3] Although not incumbent upon this court to go into the facts, we have examined the same, and conclude that the findings of the master in chancery, which were made the basis of the judgment of the court, are fully sustained by the facts. The Orizaba ditch was completed before the construction contract was executed, but the ditch was an essential part of the drainage system and it was fully described in the plans and specifications. It became a necessary part of the work done for appellant. If it had not been completed before it would have been absolutely necessary for it to be constructed after the execution of the contract. Appellant will not be given the benefit of the ditch without paying for it, whether the engineer in charge reported it or not. The evidence shows, as found by the master in chancery, that it was in the contemplation of the parties to the construction contract that the Orizaba ditch, which had been previously excavated, should be estimated by the engineer "according to plans and specifications, in like manner as any other excavation done under the terms of this contract and this fact was a material consideration in the making of the contract." No other reasonable construction can be placed upon the contract.

The court did not err in holding that appellant was bound by the agreement to submit the issues to the master in chancery, but if he had gone into the evidence he would, under the facts, have arrived at the same conclusion as did the master.

The judgment is affirmed.