Sarah Louise Smith ABRAMSON, now Louise Sparr Smith, Appellant,

v.

A.D. ABRAMSON and Adaco Ltd., Inc., Appellees.

No. A14–89–00628–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 15, 1990.

Rehearing Denied May 3, 1990.

Robert E. Newey, Mary M. Rawlins, Houston, for appellant.

Roger D. Townsend, Ben Taylor, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

OPINION

J. CURTISS BROWN, Chief Justice.

From reading the style of this appeal one could correctly deduce its nature as a family law case. It is plainly not a divorce

---

case—given the involvement of Adaco, Ltd., Inc.—but that fact in no way takes away from the richness of the issue raised. The controlling question is whether a litigant may file a suit, try the case to a jury, halt the trial halfway through and agree to refer it to a master, present the case to the master, fire her lawyer halfway through and finish that proceeding pro se, lose badly, *and then* successfully contest the master's jurisdiction on appeal. We think not.

## I.

Appellant Smith and appellee Abramson had been divorced for nearly four years when Smith filed this lawsuit, alleging fraud and various other theories arising out of their agreed settlement in the divorce. This suit went to trial before a jury. In the midst of trial the parties agreed to refer the case to a master. We say "the parties," but Smith insists she did not agree; rather, she maintains, whereas the *attorneys* may have agreed, *she* never signed the order appointing the master. In any event, that distinction appears not to have occurred to her until a day and a half into the proceeding before the master, when she sacked her lawyer. She asked the master to sign an order permitting withdrawal of her counsel, and he did so. She completed the case acting pro se. The master ultimately held against her and made findings to support an award of damages and legal fees to her ex-husband. Upon return of the proceedings to the trial court, the district judge fully adopted the master's findings.

Smith now appeals and contends that the trial court could not delegate its adjudicative duty. In support of this argument she cites various statutes authorizing use of masters, substitute judges, and alternate dispute resolution processes. These devices are said to be inapplicable here. Furthermore, she denies the validity of any agreement pursuant to TEX.R.CIV.P. 11. That rule, an immensely powerful one, is in the nature of a statute of frauds, providing for the enforceability of agreements between attorneys in a lawsuit. For their part, appellees make a policy argument based on rule 11 and the structure of our adversary system. They say the agreement at hand need not be pigeonholed into any narrow juridical category with appended statutory tag.

## II.

In the words of a leading treatise, "The courts of Texas have not had occasion to develop an extensive body of law with respect to masters." 3 R. McDONALD, TEXAS CIVIL PRACTICE § 10.17.1, at 28 (rev. 1983). To explain our holding we must therefore begin with the actual agreement and pertinent enactments. The order of reference begins as follows:

On the 31st day of January, 1989, the Court considered the parties' stipulation for appointment of Master in Chancery.

Plaintiff/Counterdefendant, SARAH LOUISE SMITH ABRAMSON (now known as LOUISE SPARR SMITH), appeared in person and through her attorney of record....

The Defendants/Counterplaintiffs, A.D. ABRAMSON and ADACO LTD., INC., appeared in person and through their attorneys of record....

By stipulation and agreement in open court, pursuant to Rule 11, Tex.Rules Civ.App., the parties, by and through their attorneys of record, agreed that Defendants' Plea in Bar be, and the same is, in all things, GRANTED. Such order granting said Defendants' Plea in Bar is binding upon the Master in Chancery.

. . . .

The Court having considered the pleadings and heard the evidence and argument of counsel and the agreement and stipulation of the parties, and taking judicial notice of the proper proceedings in this matter and of the Court's file and discovery taken finds that good cause exists for the appointment of a Master in Chancery in this cause.

With that the order goes on to specify what powers the master may exercise, expressly granting the powers of a court of equity,

except as specifically denied in the order.[1] The remainder of the order provides for each party to share in paying the master's expenses. Again, the order is signed by counsel for both sides, the judge, and the master, but not by Smith herself.

Statutory authorization for employment of masters in family law cases may be found in chapter 54 of the Texas Government Code. In subchapter A there appears a general framework for appointment of masters, applicable statewide. Other subchapters provide for modified procedures in certain named counties, but as there is no pertinent legislation specifically applicable to Harris County, we must fall back on subchapter A. That enactment spells out the types of proceedings a master may entertain, and among such examples is "a matter on which the parties agree." TEX. GOV'T CODE ANN. § 54.005(a)(10) (Vernon 1988).

As to the scope of a master's authority, the law requires issuance of an order of referral which may limit the power or duties of the master. *Id.* § 54.006. If the order fails to impose limitations, then the statute itself says what those powers shall be. It lists eleven specific powers followed by a grant of authority to do whatever is necessary and proper for the exercise of those named powers. *Id.* § 54.007. We need not quote that list verbatim, because it is similar to the order of referral excerpted above. In one of the final sections the legislature took care to note that subchapter A shall not govern a master appointed pursuant to TEX.R.CIV.P. 171; that type of master has whatever duties and powers as the order of appointment sets forth. *See* TEX.GOV'T CODE ANN. § 54.016. Rule 171,

the general rule governing appointment of a master in civil cases, is not limited to family law matters, but it provides a similar option for adjudicative delegation by a trial judge. *See generally* 3 R. McDONALD, TEXAS CIVIL PRACTICE §§ 10.15, 10.17.1–10.-17.3 (rev. 1983) (discussing the use of masters and auditors).

There is a dispute over precisely what sort of master the trial judge appointed in this case. Appellant devotes considerable energy to controverting the viability of a rule 171 reference or a subchapter A appointment. She also distinguishes TEX.CIV. PRAC. & REM.CODE ANN. chapter 151, which allows an agreed referral to a "special judge." *See generally* Newton & Swenson, *Adjudication by Privately Compensated Judges in Texas*, 36 BAYLOR L.REV. 813 (1984) (on the use of substitute judges). For purposes of analyzing the court's power to do what it did, we may draw an analogy to Justice Jackson's concurring opinion in the Steel Seizure case. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952). There he laid out a three part scheme for examining presidential power. Though this approach makes for "a somewhat over-simplified grouping," *id.*, it allows at least a methodical inquiry. Here it is necessary to analyze the issue of judicial authority to appoint a master, and we can follow a similar scheme having three parts. The approach we adopt recognizes three basic sources of judicial power: the constitution, statutes, and litigant consent.

## III.

First, a court may act on the basis of pure judicial power, unaffected by statu-

---

**1.** The following powers are then recited: to conduct hearings and make a record; to receive and report evidence; to regulate proceedings and issue contempt citations; to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order; to require production of evidence; to rule on the admissibility of evidence and put witnesses under oath; to file a report with findings of fact and conclusions of law on or before the tenth day after the close of evidence. It concludes:

The parties stipulate and agree and it is therefore ORDERED, ADJUDGED and DE-

CREED that the parties will be bound by the findings of fact and conclusions of law to the same extent as if found and issued by this Court and specifically waive the right to trial by jury and to except to such report. The parties do not waive their right to appeal to an appellate court from the final judgment of the court.

It is further ORDERED, ADJUDGED and DECREED that the final judgment in this cause shall be entered based upon the findings of fact and conclusions of law by the Master, which shall be adopted by the Court.

tory directive or consent of the litigants. This inherent power flows from article V of the Texas Constitution and includes whatever powers were possessed by courts of law or equity. TEX. CONST. art. V, § 1, cl. 1 ("The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law."). Someone who attacks an action taken on this basis need only show that it exceeded the judicial power. *See* TEX. CONST. art. II, § 1 (mandating separation of powers); *see also Clear Lake City Water Auth. v. Salazar,* 781 S.W.2d 347 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding) (finding limitations on judicial power to scrutinize a legislator's subjective thought processes).

Second, a court may act on the basis of inherent judicial power, modified by whatever statutory enactments the legislature has passed, but again without the consent of the litigants. Here Article V power furnishes the starting point, but the legislature may expand or contract the realm of judicial power by law, assuming it does so constitutionally. *See* TEX. CONST. art. V, § 1, cl. 2 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."). In this second category would be such actions as those authorized by TEX. R.CIV.P. 171 (masters), 172 (auditors); TEX. GOV'T CODE chapter 54 (family law masters); and TEX.CIV.PRAC. & REM.CODE ANN. chapter 151 (special judges). A challenge to this type of act must either establish *noncompliance* with the statute relied on by the judge, or show *preemption* of judicial power by virtue of the statutory scheme. For example, a successful attack on the appointment of a master or auditor under the rules of civil procedure must show the trial court abused its discretion. *Mann v. Mann,* 607 S.W.2d 243, 246 (Tex. 1980); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 510–11 (Tex.1980); *Robson v. Jones,* 33 Tex. 324, 327–28 (1870).

Finally, a court may act pursuant to consent of the litigants. Here the judge exercises whatever decisional authority the parties confer; such power exists in addition to that supplied by article V, and as modified by statute. Thus, attorneys could make a rule 11 agreement permitting the judge to take actions that would not be sustainable on the basis of inherent or statutorily granted powers. If a challenge to this kind of an exercise is to succeed, it can only be because the exercise was in *violation* of a statute or *altogether beyond* the limits of the judicial power. The clearest example of such a case would be an attempt to confer subject matter jurisdiction by agreement.

■ The case before us appears to fall into the third category. We have a valid instance of consent to appointment of a master. Appellant's protest that only her lawyer consented ignores both the rule that a lawyer may take actions binding on the client, *Noska v. Mills,* 141 S.W.2d 429, 432 (Tex.Civ.App.—Dallas 1940, no writ), as well as the plain fact of her own participation before the master for a day and a half before discharging her counsel. It will not do to deny consent now that the result has turned out an unhappy one. *See Crysup v. Crockett Auto.,* 18 S.W.2d 715 (Tex.Civ.App.—Austin 1929, no writ).

■ The law has long been settled that parties may properly agree to submit their case to a third party. Such a decision is *Myers v. Easterwood,* 60 Tex. 107 (1883). There a statute provided for arbitration by two arbitrators, whereas the litigants agreed to submit their dispute to only a single third party. The trial court ordered enforcement of the agreement, and the supreme court unanimously affirmed. Writing for the court, Justice Stayton explained the decision on grounds that apply so well to our case that an extended quotation is in order:

There are some things in the agreement of the parties to arbitrate which indicate that it was their intention to arbitrate under the statute. Though the arbitration cannot be sustained as one

under the statute, for the reason that the matter was submitted to one sole arbitrator, while the statute provides for two, and, in case of their disagreement, for an umpire, yet we are of the opinion that the parties must be held to have intended that such an arbitration should be made as would effectually settle the matter of difference between them, and as should be enforceable by the courts.

In other words, they must be held to have known that their agreement was not good for an arbitration under the statute; held to have known the law applicable to their agreement, and to have intended that their agreement should have effect, which can be given to it only by considering it as an arbitration and award good at law, and without reference to the statute.

We do not propose to enter into an extended consideration of the vexed question as to whether an arbitration intended by the parties to be under the statute, but for some reason not carried out in accordance with the statute, should be enforced as a common law arbitration and award. The authorities upon this question are conflicting.

In this case it appears that there was a controversy,—a suit actually pending between them in regard to the ownership of the land in question, and that by an instrument in writing they each agreed to leave their respective rights to the determination of one man, in whose integrity they each had confidence, and with whose award they agreed to abide and comply.

. . . .

The award of the arbitrator is substantially the agreement of the parties, for they each empowered the arbitrator to ascertain and declare the terms of the agreement, and by his award, when fairly made, they ought to be as much bound as though they had made an agreement directly between themselves, embracing the terms of the award.

*Id.* at 109–10. In such a case, he concluded, "the courts have full power to, and ought to, give full effect to the agreement of the parties." *Id.* at 111.

*Myers* controlled the outcome of *San Benito Cameron Cty. Drainage Dist. v. Farmers' State Guaranty Bank,* 192 S.W. 1145 (Tex.Civ.App.—San Antonio 1917, writ ref'd). There the court saw no reason why litigants could not refer their case by agreement:

> While no statute exists in Texas empowering a court to appoint a master in chancery by consent of parties, there is no inhibition against such a procedure. The court in this case did not of its own motion appoint a master and define his power and duties, but the appointment was made with the full consent of all the parties.... The choice was not forced upon appellant, but it sought the appointment of the master and agreed that his report should not be attacked unless exceptions to it were filed in a certain time. *There can be no doubt that appellant could have agreed to submit all differences to an individual, not calling him a master in chancery, and could agree that it would abide by his decision.* It would, in effect, be merely an agreement to arbitrate which would be binding on the parties. Any mode that parties may select to arbitrate their differences is approved by statute.

192 S.W. at 1146 (emphasis added).[2] We too find a proper exercise of judicial power,

**2.** The court went on:

> The contract was one not only between the parties, but their faith was pledged to the court, in order to have the appointment of a master in chancery, that the parties would submit to the conditions and requirements embodied in the order. Without the enforcement of the agreement the appointment of a master would have been useless and futile, and the end desired, the avoidance of a complicated court trial, would be rendered absolutely nugatory and ineffectual. The enforcement of the agreement is not obnoxious to public policy and invades no public right, but is in the line of expediting judicial business and conserving the time and money of the state. The agreement involved the rights of the contracting parties, and affected the rights of no one else. There is nothing unfair or reprehensible in the contract, but it was entered into for the best objects and purposes, and it should be enforced....

because the parties consented and the rule of *Myers* therefore applies. Texas law plainly allows for the enforcement of an agreement to appoint a master or auditor. *See Minchen v. First Nat'l Bank of Alpine*, 263 S.W.2d 601, 604 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.); *Gulf & B.V. Ry. Co. v. Winder*, 26 Tex.Civ.App. 263, 63 S.W. 1043, 1045–46 (Tex.Civ.App.—1901, writ ref'd); *see also Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex.App.—Houston [1st Dist.] 1988) (orig. proceeding) ("either the trial court or counsel for any party was authorized to suggest that the case be referred to an alternative dispute resolution procedure" pursuant to TEX.CIV.PRAC. & REM.CODE § 154.021).

■ Appellant's remaining challenges to the appointment amount to an attack on the master's subject matter jurisdiction, despite the existence of consent. These arguments consist of two basic elements: first, a claim that the appointment fails to fit within existing statutory procedures; second, that such statutes preempt the field of appointment altogether. For example, appellant cites TEX.CIV.PRAC. & REM.CODE ANN. chapter 151, which is entitled "Trial by Special Judge." That statute sets forth a mechanism for referring cases to retired or former district judges. The master in our case is not a retired or former district judge, so this law could not possibly supply authority for the appointment. But we emphatically reject the claim that it preempts the entire field of referral by agreement.

■ The very next portion of the Civil Practice and Remedies Code authorizes counties to establish alternative dispute resolution systems. *See id.* chapter 152. Just last year the legislature provided for judicial adoption of settlement weeks. *See id.* chapter 155. And it is particularly difficult to sustain a preemption claim given the ringing words of § 154.002:

> We conclude, in the first place, that the appointment of the master in chancery by the district court was legal and proper, and, in the second place, that appellant, having agreed in open court to the appointment, together with all the conditions appended thereto, is bound by such conditions as it would be in any other fair contract. If it should be considered that no authority to appoint a master in chancery

It is the policy of this state to encourage the peaceable resolution of disputes … including … the early settlement of pending litigation through voluntary settlement procedures.

*See also id.* § 154.003 ("It is the responsibility of all trial and appellate courts and their court administrators to carry out the policy under Section 154.002."). In light of these repeated expressions of legislative encouragement of varying approaches to dispute settlement, we find neither a statutory violation nor preemption. Points of error one through fifteen are overruled.

### IV.

The remainder of appellant's contentions go to the merits of the master's findings and to his rulings in respect of withdrawal of appellant's counsel. Appellant assigns error to the master's oversight of the withdrawal hearing, for no court reporter was present and no record of the hearing exists. She also complains of being denied the opportunity to locate new representation; instead, she claims, the master improperly denied her requests for a continuance and thus forced her to wage an unwinnable war on her own.

With regard to the regularity of the process, we find no error. The master found the suit to be without merit and to constitute outrageous behavior, a finding which is challenged but must stand undisturbed in light of the incomplete statement of facts (hundreds of exhibits are evidently not before us). *See* TEX.R.APP.P. 50(d); 53(k); *see also* TEX.R.APP.P. 81(b). Based on that prevailing condition, the master could properly have refused to allow an intolerable prolongation of the process. Accordingly, there was no abuse of discretion in requiring the litigation, which had already been arrested once during jury tri-

> is vested in the district court, except in cases of receiverships, then we think the agreement made in open court to appoint a man with powers in regard to the controversy between the litigants would be binding upon the parties to the agreement, and its enforcement is just and proper.
>
> *Id.* at 1147.

al, to wind down towards its inevitable conclusion. Likewise, the incomplete record requires us to respect the trial court's adoption of the master's findings on liability and damages. What record there is lends full support to those findings. We overrule points of error sixteen through twenty-seven.

The judgment is affirmed.