Wendell Patrick **BRYAN, Guardian of the Estate of Denise Bryan, and Wendell Patrick Bryan, Appellants,**

v.

**Franklin POGUE, et al., Respondents.**

**No. WD 57834.**

Missouri Court of Appeals, Western District.

May 23, 2000.

Bruce R. Bartlett, St. Louis, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondents.

Before Presiding Judge VICTOR C. HOWARD, Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant, Wendell Patrick Bryan, for himself and as guardian of the estate of Denise Bryan, his wife, appeals the trial court's entry of judgment in favor of Defendants–Respondents, Missouri State Highway Patrolman J.P. Lysaught and the Missouri State Highway Patrol, on their motion for summary judgment. Plaintiff claims that the trial court erroneously interpreted Section 270.010 RSMo 1994, which provides that a sheriff or other officer who improperly discharges his duties under that section shall be "liable on his bond." The trial court held that this statute constitutes a limited waiver of the official immunity doctrine only to the extent of the officer's bond, and where, as here, the officer has no bond and is not required by law to have one, then the statute provides no basis for liability and the official immunity doctrine applies to protect him from liability for his discretionary official acts. We concur with the trial court's interpretation of the statute, and affirm the grant of summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

The factual underpinnings of this case are set out in the previous opinion of this Court in this matter, *Bryan v. Lysaught*, 963 S.W.2d 403 (Mo.App. W.D.1998) ("*Bryan I*"), and we refer the reader to that case for a fuller factual discussion. As relevant to this appeal, we note only the following basic facts:

On December 4, 1990, Denise Bryan was driving from Columbia, Missouri, to her home in Marshall, Missouri. Ms. Bryan was employed as a travel agent at Summit Travel in Columbia at the time. At approximately 7:13 p.m., Ms. Bryan collided with a cow in the northbound lane of Highway 65, approximately two miles south of Marshall. She was then hit in the rear by a vehicle operated by James Chitwood.

Ms. Bryan suffered severe and permanent injuries as a result of this accident.

Wendell Patrick Bryan, Ms. Bryan's husband, was named guardian of Ms. Bryan's estate and initiated a lawsuit against Franklin Pogue, James Chitwood, the Saline County Sheriff's Department, Highway Trooper J.P. Lysaught, and others. Mr. Bryan also filed a loss of consortium claim. The Missouri Highway Patrol and Trooper Lysaught are the only remaining defendants in this action.

Discovery revealed that, on December 4, 1990, at approximately 6:40 p.m., 33 minutes prior to Ms. Bryan's accident, Trooper Lysaught was advised by Troop A radio dispatch that an accident had occurred on Highway 65, involving a car driven by Garret and Phoebe Jones and a cow. Trooper Lysaught arrived at the scene of the initial accident by 6:45 p.m. Based on his interview with the Joneses and inspection of the automobile, Trooper Lysaught determined that the initial accident was caused by a "short-horned red" cow belonging to Franklin Pogue. Trooper Lysaught said that he searched for the cow in the vicinity of the accident, but he could not find the cow. He remained at the scene and "worked" the accident for 30 minutes, and drove up and down Highway 65 in search of the cow, but still did not see it. Ultimately, he left the scene in order to transport the Joneses to a Concordia High School basketball game.

Upon arriving in Concordia, Trooper Lysaught was advised by Troop A radio dispatch that another accident had occurred on Highway 65. This accident occurred a few hundred feet away from the location of the Joneses' accident. According to the police report, the second accident occurred at 7:13 p.m. and involved Denise Bryan, a short-horned red cow, and another automobile. The police report indicates that Trooper Lysaught arrived at the scene of Ms. Bryan's accident at 7:34 p.m. According to the police report, nine cows were wandering loose in the immediate vicinity of Ms. Bryan's accident. Eight

of the cows were owned by Franklin Pogue.

On September 9, 1996, Trooper Lysaught filed a motion for summary judgment. On January 16, 1997, the trial court entered summary judgment in his favor, stating that "Lysaught complied with the provisions of Section 270.010 RSMo and did not violate his duty under that statute because he looked for any cattle running at large and tried to determine if any cattle were at large." The court found that, having attempted to fulfil his duty, Trooper Lysaught was entitled to official immunity as to how he performed that duty, in that the duty imposed by Section 270.010 was a "discretionary" one. The trial court also found that the Missouri Highway Patrol is an agency of the State and protected by sovereign immunity. It then granted summary judgment to Trooper Lysaught and the Highway Patrol.

*Bryan I* reversed the January 16, 1997 grant of summary judgment, finding that a genuine issue of material fact existed regarding whether the trooper fulfilled his statutory duty under Section 270.010. If not, then, the court held, although the trooper's exercise of his duty to locate and restrain the cow was a discretionary function, and therefore protected under the official immunity doctrine, Section 270.010 partially waived that immunity by providing that an officer is liable *to the extent of his bond. Id.* at 406–07. Stating that under the statute, "by implication, an officer cannot be held liable in excess of his bond," *Bryan I* remanded for further proceedings.

On September 20, 1999, following *Bryan I,* the trial court again granted summary

judgment in favor of Trooper Lysaught. The court found that, as Trooper Lysaught was not required to file a bond under Section 43.140, and had not done so voluntarily, the statutory waiver of official immunity to the extent of the trooper's bond did not apply, and the trooper could not be liable for the injuries sustained by Mr. Bryan. This appeal followed.

## II. STANDARD OF REVIEW

Appellate review of the propriety of summary judgment is *de novo. Williams v. City of Independence,* 931 S.W.2d 894, 895 (Mo.App. W.D.1996). We view the record in the light most favorable to the party against whom summary judgment was entered, affording that party all reasonable inferences that may be drawn from the evidence. *Id.* We will affirm the grant of summary judgment if we determine that no genuine issues of material fact exist and the movant has a right to judgment as a matter of law. *Id.*

## III. LEGAL ANALYSIS

■ Mr. Bryan raises two related points on appeal. First, he claims that the trial court erred in construing the language in Section 270.010 that an officer is "liable on his bond" to mean that an officer cannot be liable if he or she has not obtained a bond. He also argues that to interpret the statute to allow an officer to escape liability by not obtaining a bond would render the protection intended to be provided by the statute illusory, for one could avoid liability merely by not obtaining a bond.[1]

Section 270.010 states in relevant part:

It shall be unlawful for **the owner of any animal or animals** of the species of

---

1. We note that the State argues that we should not reach the issues raised on appeal as to the meaning of "liable on his bond" because *Bryan I* already held that this language means that an officer is liable only to the extent of his bond, and that ruling is the "law of the case". Mr. Bryan responds that this aspect of *Bryan I* was only *dicta,* had not been briefed, and should not be binding here, citing cases such as *Bandy v. State,* 847

S.W.2d 93, 94 (Mo.App. W.D.1992). Even if we were to agree that the law of the case doctrine does not apply, or that an exception to it exists here, it would not assist Mr. Bryan, for we find that Mr. Bryan's arguments on appeal as to the meaning of "liable on his bond" are not well taken. For this reasons, we proceed directly to that issue, and therefore do not further address the State's law of the case argument.

horse, mule, ass, cattle, swine, sheep or goat, in this state, to permit the same to run at large outside the enclosure of the owner of such stock, and if any of the species of domestic animals aforesaid be found running at large, outside the enclosure of the owner, it shall be lawful for any person, *and it is hereby made the duty of the sheriff or other officer having police powers, on his own view, or when notified by any other person that any of such stock is so running at large, to restrain the same forthwith,* and such person or officer shall, within three days, give notice thereof to the owner, if known, in writing, stating therein the amount of compensation for feeding and keeping such animal or animals and damages claimed, and thereupon *the owner shall pay* the person, or officer, taking up such animal or animals a reasonable compensation for the taking up, keeping and feeding such animal, or animals, and shall also pay all persons damaged by reason of such animals running at large, *the actual damages sustained by him or them;* provided, that said owner shall not be responsible for any accident on a public road or highway if he establishes the fact that the said animal or animals were outside the enclosure through no fault or negligence of the owner.... *Any failure or refusal on the part of such officer to discharge the duties required of him by this section shall render him liable on his bond to any person damaged by such failure or refusal, which damages may be sued for and recovered in any court of competent jurisdiction.*

Sec. 270.010 RSMo 1994 (emphasis added). The essence of Mr. Bryan's argument is that, if the legislature had wanted to limit an officer's liability to a specific amount, it would have used more direct language, such as "an officer will be liable only up to the amount of bond filed by the officer." By using indirect language, "the officer will be liable on his bond," the

legislature simply meant to make it clear that the failure to adequately perform the officer's duty would constitute a breach of that duty and the injured party would be able to sue the officer for the amount of the bond; it did not intend to state that the injured party could not sue for other monies too if there was no bond or if the bond was too low. In support, Mr. Bryan notes that Section 537.610 RSMo, which contains a partial waiver of the sovereign immunity of the State, specifically lists a limit to the amount of money as to which immunity is waived. By implication and by applying the principle that statutes should be read in *pari materia* with other statutes on similar subjects, he suggests that because the legislature thereby showed it was aware of the language necessary to limit its liability to a specific amount, yet chose not to use that language here, it must not have intended that an officer would be liable *only* to the amount of his bond, but rather just that he could be sued on his bond.

■ We do not agree that the mention of a specific dollar limit to the State's express waiver of sovereign immunity in Section 557.600 [2] has any relevance in determining the meaning of the language used by the legislature in Section 270.010 concerning an officer's being liable on a bond. In the latter case, the legislature simply chose to take a different approach than it took in regard to sovereign immunity. Rather than setting a specific upper dollar limit of liability in Section 270.010 itself, it chose to state in that statute that the limit of an officer's liability will be the amount of his or her bond. Sec. 270.010. This makes sense, for under Missouri's official immunity doctrine, an officer would not normally be liable for a discretionary act at all, even if it were negligently performed. If the officer has a bond, however, then an officer could be held accountable to an injured party without violating the principles governing the official immu-

**2.** Section 537.600.1(1) deals with injuries resulting from the negligent use of motorized vehicles. Section 537.600.1(2) deals with the

dangerous condition of an entity's public property that causes injury.

nity doctrine, for the purpose of that doctrine is to eliminate the fear of personal liability that would otherwise:

'hang over public officials as they make judgments affecting the public safety and welfare.' [*Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987)]. Without this immunity, the public interest 'will inevitably suffer from the too complacent attitude thus engendered.' [*Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985)] (quoting *Smith v. Berryman*, 272 Mo. 365, 199 S.W. 165, 167 (Mo. banc 1917)).

*Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo.App. E.D.1993).

However, if an officer were made liable for amounts greater than the bond he or she had obtained, then all the concerns which are intended to be avoided by the official immunity doctrine would apply. It thus makes sense that the legislature limited the officer's liability to only the amount of his bond. Moreover, because different officers are required by other statutes to have bonds in different dollar amounts, it was reasonable for the State to use the more general language that an officer is "liable on his bond" rather than to set out a specific dollar amount as to which immunity was waived, for imposing liability to the extent of the officer's bond would take into account any type of officer with a duty under the statute and that officer's respective bond requirement.[3]

Mr. Bryan next argues that the trial court's interpretation of the statute fails to give effect to the legislature's purpose in enacting the statute, that is, maintaining safety on the highways in Missouri, in that it would permit a Missouri trooper such as Trooper Lysaught to escape liability under Section 270.010 simply by failing to obtain a bond. Thus, Mr. Bryan asserts, the legislature must have intended that every officer be liable, even if the officer did not obtain a bond. And, the logical limit of that liability would be the actual damages suffered by the injured party. We disagree.

■ As discussed above, to impose liability on an officer beyond the bond obtained by the officer would contravene the principles underlying the official immunity doctrine by making the officer personally liable for his exercise of a discretionary function. Nothing in Section 270.010 suggests that the legislature intended such a result, and we decline to imply such an abrogation of this important doctrine from language which, on its face, states that immunity is waived only "on his bond." Moreover, we note that, if the legislature had intended that an officer be held liable for the amount of actual damages suffered, rather than for the amount of his or her bond, it could and would have said so, as it did when discussing the liability of the owner of the animals causing damage. The legislature there stated that the owner would be liable for *"the actual damages sustained by him or them,"* and placed no limit on that amount. Sec. 270.010. When discussing the officer's liability for failing to meet his or her duty under the statute, however, the legislature did not say the officer was liable, as is the owner, for "the actual damages sustained," or that the officer was personally liable.[4] Rather, it states that the officer is liable *"on his bond."* Thus, we find that under the plain language of the statute an officer's liability

3. Section 43.140 sets the bond requirement for certain members of the Highway Patrol. The supervisor's bond is set at $20,000.00 and the "major, director of radio, each member assigned to duty in the department of finance and statistics and each member assigned to duty in the department of supplies and equipment" are required to be bonded in the amount of $10,000.00. Sec. 43.140 RSMo 1994. Section 57.020 requires that every sheriff "give bond to the state in a sum not less than five thousand dollars nor more than fifty thousand dollars." Sec. 57.020 RSMo 1994.

4. *See Bachmann*, 860 S.W.2d at 33 (under the official immunity doctrine, officers are not personally liable in tort for injuries resulting from negligent performance of their discretionary acts or omissions).

under Section 270.010 is limited to the amount of his or her bond.

Finally, we note that we do not here face a situation in which Missouri statutes required an officer to obtain a bond yet the officer or his supervisors failed to do so, and do not address whether, in such a case, liability could be imposed at least to the minimum amount of the bond which the law had required the officer to obtain. Here, it appears to be conceded that no statute required Officer Lysaught to obtain a bond, and that the Patrol did not obtain one for him. If that is the case, then there is no fault on his part in not having a bond, and no reason to imply a waiver of his official immunity where the statute does not require a bond. Had the legislature intended all officers to obtain bonds and to be subject to liability to the extent of such bonds, it could have said so, in the same way that Section 43.140 requires that certain Patrol supervisors obtain a bond in a set amount. It did not do so here.

In sum, an officer is liable only on his bond; here Trooper Lysaught had no bond and was not required to have one. Accordingly, the official immunity doctrine applies, and we concur with the trial court that summary judgment was proper on Plaintiff's claim against Trooper Lysaught. The judgment is affirmed.

Presiding Judge VICTOR C. HOWARD and Judge JOSEPH M. ELLIS concur.